IN ERROR.
........
ALBANY,
February, 1822.

PARDEE
v.
BLANCHARD.

CALVIN PARDEE, Plaintiff in Error,
*against*
THOMAS BLANCHARD, Defendant in Error.

A light one-horse waggon, with a frame box, swelled sides, painted in imitation of pannel work, a crooked bolster, a chair seat, with wooden springs, in which were two passengers, a trunk, a box, a bag of oats, and a bottle, is not "a *chair or pleasure carriage*, with one horse," within the meaning of the *act* (Sess. 23. ch. 78,) passed the 1st April, 1800, "*to establish a Turnpike Road Company, for improving the State Road from the house of John House, in the village of Utica, in the county of Oneida, to the village of Cayuga*," &c. and of the acts passed in addition to, and in amendment thereof: and is not, therefore, subject to a higher *toll* than *six* cents, or the toll for a "one-horse cart," in passing through the toll-gate on th northbranch of the Seneca Turnpike Road, in the town of Manlius.

*Contra, Moss v. Moore,* 18 *Johns. Rep.*129.

IN ERROR to the Supreme Court. This cause was originally commenced in a Justice's Court, and removed to the Supreme Court, by *certiorari*. *Pardee* brought an action before the justice against *Blanchard*, for demanding and taking from the plaintiff twelve cents and a half, as *toll*, for passing a toll-gate on the north branch of the *Seneca* turnpike, in the town of *Manlius*, in the county of *Onondaga*, with a one-horse waggon ; and for stopping the plaintiff until he had first paid the toll, contrary to the *twelfth* section of the act to establish a turnpike company for improving the state road from the house of *John House*, in the village of Utica, &c.—passed the 1st of April, 1800, and contrary to the act to amend and explain the same; to the damage of the plaintiff, 25 dollars. The defendant pleaded the general issue. The cause was tried by a jury. The plaintiff proved that the defendant refused to let him pass in his one-horse waggon, without first paying twelve cents and a half. The plaintiff objected that the defendant was entitled to demand *six* cents only, which he offered to pay, but which the defendant refused to accept, and the plaintiff was obliged to pay the twelve cents and a half. The witnesses described the waggon as follows : The box was painted on the outside in imitation of pannel work, made with a frame and the boards bent in the inside, the bolster crooked, but no springs ; the seat was a common chair on wooden springs, with a skin upon it. The waggon was adapted to go to mill, or to carry passengers, and for other purposes. There was, at the time, in the waggon, one person beside the plaintiff, a trunk, a box, a bag of oats, and a bottle. One witness said he thought it to be a common one-horse waggon, such as are in general use in the country, and supposed that it would be called by some a pleasure waggon. Two other witnesses said that they should not call it a pleasure waggon ; that, like all other waggons, it might be used to ride in for pleasure, or

for other purposes. The jury found a verdict for the plaintiff, for 25 dollars, on which the justice gave judgment. On a return to a writ of *certiorari* of the proceedings and evidence in the Justice's Court, the Supreme Court, in January term, 1821, reversed the judgment of the Justice's Court, with costs. The plaintiff, thereupon, brought a writ of error returnable to this court.

IN ERROR.

... ..

ALBANY,
February, 1821.

PARDEE
v.
BLANCHARD.

*I. Hamilton*, for the plaintiff in error. He cited *Moss* v. *Moore*, 18 *Johns. Rep.* 129. *L. N. Y. K.* & *R.'s* ed. vol. 2. p. 418. sess. 23. ch. 78. s. 11. sess. 29. ch. 75. s. 6, 7. sess. 38. ch. 138. s. 1, 2. sess. 43. ch. 203. sess. 37. ch. 35. s. 3. ch. 36. s. 3. ch. 151. s. 3. ch. 190. s. 3. sess. 38. ch. 104. s. 3. ch. 119. s. 4. ch. 213. s. 6. ch. 219. s. 6. ch. 258. s. 3. *Bac. Abr.* tit. *Statutes*, G. 6. I. 65. s. 23, 24. 30.

*Sill* and *Young*, contra. They cited *Statutes*, sess. 41. ch. 117. s. 3. ch. 86. s. 3. sess. 39. ch. 43. ch. 98. s. 3. ch. 101. s. 3. ch. 100. sess. 38. ch. 104. ch. 118. 132. 165. 122. 118. sess. 37. ch. 35. 61. 111. 182. 89. 93. sess. 41. ch. 98. 190. 200. 102. 6 *Cranch's Rep.* 131. 7 *Johns. Rep.* 477. 17 *Johns. Rep.* 193. *Statute*, sess. 27. ch. 84. s. 19. sess. 38. ch. 129. 139. sess. 40. ch. 73. 84. 122. sess. 41. ch. 98. 190.

THE CHANCELLOR. The plaintiff in this case sued the defendant before a justice of the peace in *Onondaga* county, for having demanded and taken of him twelve and a half cents, for passing a toll-gate, on the north branch of the *Seneca* turnpike with a one-horse waggon. The cause was tried by a jury, and on the trial the plaintiff proved that the defendant refused to let him pass the toll-gate in *Manlius*, with his one-horse waggon, without the payment of twelve and a half cents, and that the plaintiff offered six cents. The only inquiry and controversy at the trial was as to the character of the carriage or vehicle in which the plaintiff rode. The act of the 1st of *April*, 1800, (sess. 23. ch. 78.) under which the toll was exacted, declared, that for *every waggon* with two horses, twelve and a half cents might be demanded, and for every *four-wheeled pleasure waggon* with two horses,

IN ERROR.
........
ALBANY,
February, 1821.
⌣⌣⌣
PARDEE
v.
BLANCHARD.

twenty-five cents. The act thus made a discrimination between a waggon with two horses, and a pleasure waggon with two horses. The act then went on and gave a toll of twelve and a half cents, for every *chair or pleasure carriage* with one horse, and for every *one-horse cart*, six cents. It made no provision for a one-horse waggon, by that name ; and it must come under the denomination of a pleasure carriage, or else we must exempt the one-horse waggon entirely from toll, which would be unreasonable, and not within the intention of the act. If the one-horse waggon be employed in farming business, or the transportation of produce, as grain, wood, stone, manure, vegetables, dirt, &c., it would then come within the equity, though not within the letter of the provision relating to a one-horse cart. But if it was employed essentially for the easy, convenient, and quick transportation of persons, it would justly and equitably come under the denomination of a pleasure carriage, and would have to pay twelve and a half cents. A *carriage* is a general term, and will include a waggon. It does so, according to the sense of the legislature, as declared in another part of the same act of *April*, 1800, where the act speaks of those who use waggons *or other carriages*, &c. We have seen that the law distinguishes between a two-horse waggon for pleasure, and a two-horse waggon for business or burdens, and makes one pay double the toll of the other. We shall, therefore, be doing justice to the parties, and wisely fulfilling the intentions of the statute, if we distinguish in this case between a one-horse waggon for pleasure, and make it pay as for a pleasure carriage, and a one-horse waggon for purposes of labour or business ; and then it will fall within another provision which I shall presently mention.

The plaintiff examined four witnesses on the trial before the justice, and the defendant examined one : the object of the inquiry was, to ascertain the character of the waggon ; and this was to be deduced from its construction, and from its use. There was no dispute about the matter of fact. The witnesses all agreed that the waggon had a box swelled at the sides, and painted in imitation of panel work : That the box was made with a frame, and the boards bent on the inside of the frame of the box, at the sides and

ends, and bolted down on crooked bolsters, and that the seat was a common chair upon wooden springs.

Here then we have a light waggon with a frame box and swelled sides, painted like panel work, and with crooked bolsters, and a spring chair. It would seem to me to be very difficult to consider such a waggon in any other light than a pleasure carriage. It was certainly not a carriage intended, by its construction, for burden, or for rough labour and business. Every person would naturally, and almost instantaneously and spontaneously, conclude, that such a carriage was constructed and intended for pleasure, or the transportation of persons.

The next inquiry before the jury was, as to the *actual* appropriation and use of the waggon, at the time the toll was demanded. It was not loaded with produce, or stone, or manure, or any materials denoting burden and business purposes. On the contrary, all the witnesses agree that the waggon had only two persons in it, with a trunk, and a box, and a skin on the chair, a bag of oats and a bottle. These were all the articles specified by any of the witnesses, and they show, demonstrably, that the waggon was used, on that occasion, as a pleasure carriage for a travelling purpose. There was nothing in it but what is usual and common, when persons undertake to travel to any considerable distance in any carriage professedly and exclusively devoted to pleasure.

But the witnesses gave their opinion upon these facts to the jury, and three out of the five said, that they should not call it a pleasure waggon, and that such a waggon might be used for other purposes.

The witnesses, no doubt, correctly said, that the waggon might be used for other purposes than pleasure, and so might the two-horse pleasure waggon spoken of in the act, but which must, as a pleasure waggon, pay twenty-five cents; and so might, also, a gig or coachee. But the true question upon this occasion was, what was the *ordinary* design and purpose of such a constructed waggon, and what was its *actual* purpose and employment when the toll was demanded ? Witnesses saying that they did not consider it a pleasure carriage, when its construction and its use showed it to be

IN ERROR.
........

ALBANY,
February, 1822.

PARDEE
v.
BLANCHARD.

IN ERROR.
........
ALBANY,
February, 1822.

PARDEE
v.
BLANCHARD.

one, could not change the nature of things, or the truth of the fact, any more than if they had said, that they considered the four legged animal which drew the waggon, and which very much resembled a horse, to be an ox. The facts attested to, and about which there was no dispute, were conclusive upon the point of inquiry as to the character of the waggon ; and the jury ought, according to the evidence, to have found for the defendant, who demanded and took toll as for a one-horse pleasure carriage.

The cause was removed, by *certiorari*, into the Supreme Court, and the judgment of the justice, founded on the verdict of the jury, was considered as erroneous, and was reversed.

The justice in this case returned into the Supreme Court all the testimony taken before him. He is, indeed, required, by the statute, to return specially as to all the facts stated in the affidavit, on which the *certiorari* was founded, and the Supreme Court are required, upon *certiorari*, to give judgment according " as the very right of the case shall appear ;" and if it appears that the recovery was not according to right and law, the Court are bound to reverse the judgment, notwithstanding the finding of the jury. When the facts come up as they do upon *certiorari*, the Court must decide upon the facts as well as upon the law ; and this has been the uniform and established practice upon *certioraris* ever since I have been acquainted with the Supreme Court.

I have, therefore, arrived to what I deem a clear and satisfactory conclusion, that the judgment of the Supreme Court in reversing the judgment of the justice, was correct, just, and legal; and that the Supreme Court could not have done otherwise consistently with the facts in the case, and the provisions in the turnpike act of 1800, under which the toll was demanded.

But we have been referred by the counsel to a declaratory act of the Legislature, passed in 1820, as having a strong bearing on this case. The act referred to is the 5th section of an act passed the 13th of April, 1820, entitled " an act relative to the Greenfield Turnpike Road Company, and for other purposes," and it is in the following words :

IN ERROR.
........
ALBANY,
February, 1822.

PARDEE
v.
BLANCHARD.

" Whereas doubts exist as to the true construction of many of the acts incorporating turnpike companies, respecting their rights and authority to receive toll upon one-horse waggons : To remove such doubts, *Be it further enacted and declared,* That it shall and may be lawful to receive at every full toll-gate, for passing the same, for every waggon drawn by one horse, six cents, and at every half toll-gate, three cents."

This provision cannot be understood as applying to the act under which this suit arose. It only applied to cases in which there was doubt whether a one-horse waggon was obliged, *in any case,* to pay toll; and no such doubt could exist under the act of 1800; for only once admit that a one-horse waggon may be built and used for pleasure, it then certainly comes within the words of the act, and falls under the description of a pleasure carriage, drawn by one horse. There can be no hesitation on this point. The declaratory act was only intended for such cases as the act of *April* 7th, 1815, (sess. 38 ch. 139.) and the ingenious counsel who argued this cause on the part of the defendant, referred us to twelve or thirteen similar statutes, in which there is no provision that will, *on any construction,* cover a one-horse waggon. It is not a chair, or sulkey, or chaise, or chariot, coach, coachee, phaeton, pleasure waggon, or carriage, or stage waggon drawn by two horses, or a cart drawn by one horse. It is neither of them, and therefore it is not embraced within the act of 1815, or the other dozen acts referred to, unless we were to call it a one-horse cart, and that would be in itself, a gross misnomer, and be giving rather too homely a name to a light, airy, and fashionable vehicle of pleasure. We are, therefore, well warranted in laying this declaratory statute entirely out of the case, as having no sort of application to the subject now in controversy. If a one-horse waggon should be a pleasure carriage (and no person doubts but that it *may* be one,) then it must be admitted that the turnpike company, whom the defendant represents, are entitled under the act of 1800, to exact twelve and an half cents toll. The act of 1820 never meant to devest the company of the right of toll in such a case, or to reduce the rate of toll from twelve to six cents.

IN ERROR.
........
ALBANY,
February, 1822.

PARDEE
v.
BLANCHARD.
be the one-horse waggon a pleasure carriage or not. The legislature, we are to presume, never meant any such thing; and it would be highly disrespectful to suppose it, because it would be an unconstitutional act, an assumption of judicial power, and an invasion of the rights of private property. This declaratory act is beneficial to the *Seneca* Turnpike Company, and to many others in this respect. It allows a toll of six cents in every case to a one-horse waggon, be it a vehicle of pleasure, or be it a vehicle of labour. So far it is a beneficial act even to the turnpike company in this cause, because now they can take six cents for a one horse waggon, if it be not a pleasure carriage, whereas, under the act of 1800, one-horse waggons not being pleasure waggons, were not within any provision for toll.

I am happy that we are not embarrassed by this declaratory act, and that it can have a full operation, and a fair and just interpretation, without at all interfering with the merits of this case. If it were otherwise, this act could not be permitted to control the judgment of this court, in the construction of the act of 1800. It would be the bounden duty of the court to preserve all existing rights under the act of 1800, according to its own sound interpretation of that act, regardless of any subsequent declaratory statute to the contrary. The case then resolves itself into the plain and simple point, was the plaintiff's one-horse waggon, at the time the toll was demanded, judging from its construction and its use, a pleasure carriage for the conveyance of persons, as contradistinguished from a one-horse waggon, made and used like a cartman's cart, for toil and burden? If it was, then the toll was lawfully demanded, and the judgment of the Supreme Court ought to be affirmed; but if it was not, then the judgment was erroneous, and must be reversed.

In my opinion, and for the reasons which I have assigned, the judgment ought to be affirmed.

FORWARD, FROTHINGHAM, HOPKINS, LEFFERTS, ROSS, and VIELE, *Senators*, were of the same opinion.

*April 1st.*
*For reversing,*
20. For affirming, 7.
But a majority of the court,* being of opinion that the judgment of the Supreme Court ought to be reversed, if

was, thereupon, ORDERED, ADJUDGED and DECREED, that
the judgment of the Supreme Court in this cause, be revers-
ed, &c.