ALBANY,
Oct. 1828.

Doe
v.
Roe.

---

## Doe *vs.* Roe.

This was a feigned issue from the equity court of the third circuit, tried at the Scoharie circuit, in June, 1827, before the Hon. WILLIAM A. DUER, one of the circuit judges. The question sent down to be tried was, whether John Jost Sidney, by his last will and testament, had devised to his nephew John Jost Sidney, his (the testator's) share of lot No. 136, in a tract of land granted to Myndert Schuyler and others, called the old Schoharie patent.

The last will and testament of John Jost Sidney, bearing date 14th June, 1813, was produced, the due execution whereof was admitted. It was also admitted, that at the time of the making the will, and at the death of the testator, he was seized in fee simple of an equal undivided third part of lot No. 136, in the old Schoharie patent. The devise in the

By a devise of "my whole share of all the land I own, which lies along Schoharie creek, which is connected or belonging to the old farm, *and known by the name of Ten Eyck's patent*," a farm owned by the testator, lying along the Schoharie creek was held to pass, altho' not within the bounds of Ten Eyck's patent. When the subject matter of devise can be located without reference to the latter words of description contained in a will, such words, if not words of restriction, may be rejected in the construction of the will. Where, from proof *atiande*, it appears that the testator did not own property corresponding with that described in his will, parol evidence may be resorted to by way of explanation of what was intended to be devised. In cases of *latent* ambiguity, the declarations of the testator, or his instructions for the drawing of the will, may be given in evidence to shew the intention of the testator. Such proof is only excluded where there is no ambiguity, and where the attempt is to shew a mistake in the drawing of the will.

will under which John Jost Sidney, the nephew, claimed the share of lot No. 136, which had belonged to the testator, is in the following words : " *I give devise and bequeath unto my nephew John Jost Sidney son to my half brother Henry Sidney deceased and to his heirs and assigns forever my whole share of all the land I own which lies along Schoharie creek which is connected or belonging to the old farm and known by the name of Ten Eyck's patent with all my share of the land in the Oak hill joining thereunto also my share of nineteen acres of land near to Walter Briggs.*" Immediately preceding this devise, were the following words : " And being willing to leave that worldly estate, wherewith it hath pleased God to bless me in this life, I do give and dispose thereof in manner following." After the devise of the land to John Jost Sidney, follows a bequest to him in these words : "all my horses, cattle, goods and chattels, what money I may be possessed with (of) at my death, and what may be due to me, together with all my wearing apparel, and all other property of whatever kind which may belong to me on said old farm." The testator then devises a farm to the three sons of his brother William Sidney ; another farm, and his share of 1260 acres of land in Cortlandt's patent, to all the children of his brothers and sisters, with certain exclusions, and directs John Jost Sidney to pay $500 to the other devisees, to be equally divided between them.

Herman Sidney, the father of the testator, owned, resided on and died in possession of lot No. 136. His children succeeded to the possession of the lot on his decease, and afterwards purchased lot No. 5, in Ten Eyck's patent. Lot No. 136 was always called *the old farm*, and lot No. 5 was usually called Ten Eyck's patent, and was never known by the name of the old farm. The testator and his half brother, Henry Sidney, owned another lot, being lot No. 1, in the subdivision of No. 134, of the Schoharie patent, and a small piece of land of 19 acres. The Schoharie creek flows through the centre of lot No. 136 ; lot no 5 is bounded on one side by the Schoharie creek, and adjoins lot No. 136 ; lot No. 1, part of No. 134, does not adjoin No. 136. The testator was born on lot No. 136, and resided on it during his life time. He was ne-

ver married.   John Jost Sidney, his nephew, was named after him, lived with him until his death, was a favorite nephew, and they lived together as parent and child.   Lot No. 5 is a wood lot; but a small proportion of it was improved at the date of the will; its value was about $1836.   The value of No. 1 was estimated at $1016, and the 19 acres were valued at $76.

The person who wrote the will was examined as a witness, and testified that he, at the time of the making of the will, was a schoolmaster in the neighborhood of the testator; that he was particularly directed by the testator to draw the will so as to devise the whole of the old farm to his nephew, John Jost Sidney, in fee; that the testator also mentioned his part of Ten Eyck's patent, and all his lands along Schoharie creek; that he made a memorandum of such instructions under the direction of the testator, which is lost; that he drew the will according to such instructions, and so intended to draw it as to devise the old farm to John Jost Sidney; that he then supposed and believed that the old farm laid in Ten Eyck's patent; that he drew the will at the school-house at leisure intervals; that when completed, he read it to the testator, and told him that by it the old farm or the old homestead was devised to John Jost Sidney; the testator said he thought the will was right, and that he was satisfied with it, and signed it.   This testimony was objected to, but received, saving to the defendant the right to object to the same in this court.

The jury, under the direction of the judge, found a verdict for the plaintiff, viz., that by the will of the testator, the property in question was devised to John Jost Sidney, subject to the opinion of this court.

*H. Bleecker*, for plaintiff.   The testator declared his intention to dispose of all his estate.   There is no devise of the residue; and if the construction on the other side is to prevail, the testator died intestate of the most important part of his property, to wit, *the old farm*.   The terms of the will include the premises in question : "My whole share of all the land I own, which lies along Schoharie creek," is a full and perfect description of the old farm, the Schoharie creek

passing through the centre of it. These words ought not, therefore, to be rendered nugatory, by *giving controlling force* to the succeeding words in the devise. The court will rather, in reading the devise, add or insert the word *also* after the words "Schoharie creek": then the devise will be of the land lying along the Schoharie creek, and also of the land connected or belonging to the old farm, and known by the name of Ten Eyck's patent; or by inserting the word *that* before the word "known," the same effect will be produced, and every part of the description satisfied. Words evidently omitted in a will, may be supplied, both at law and in equity. (*Sugden's Law of Vendors*, 107, n. 8. 4 *Vesey*, 51.) The devise was sufficiently certain, without the addition of the latter words. . Where the intent of the testator is evident, it is *the office of the court so to marshal and construe the words of the will, that the intent may take place. Plowden*, 522.) The rules laid down by *Croke*, J., in the construction of a will, are, "1. That no will ought to be construed *per parcellas*, but by entireties; 2. To admit of no contrariety or contradiction; 3. No nugation nor any nugatory ought to be in a will. These rules, being observed as a key, they will open the doors in every will. Such construction shall sometimes be made, to make that *prius* which was *posterios*, and that *posterios* which was *prius*." (2 *Bulstrode*, 178.) *Thompson*, C. J., in 11 *Johns. R.* 220, says, "If there is a certain description of the person or thing devised, and a *further* description is added, it is immaterial whether the superadded description be true or false." The following cases were cited, as to the rules which should govern in the construction of a will, and as to the supplying of words to effectuate the intent of the testator, viz.: *Cooper's Justinian*, 167, b. 2, *tit.* 20, s. 29, 30; 2 *Domat*, 54, 57, 73; 8 *East*, 104; 6 *T. R.* 675; *Cro. Car.* 447; *Bulstrode*, 176; *Comyn's Dig. tit. Devise, N.* 2; 2 *Burr.* 1089; *Shep. Touch.* 420, 439; 3 *Dyer*, 292; *Cro. Car.* 129; 11 *East*, 58; *Plowden*, 191; 4 *Tyng*, 196; *Finch's R.* 395; 8 *East*, 149; *Ambler*, 374; 2 *Burr.* 912; 6 *East*, 486; 9 *Vesey, Jun.* 225; 1 *P. Wms.* 235; 2 *Vesey, Sen.* 195; 7 *T. R.* 457; *Cro. Car.* 185; 3 *Atk.* 315; *Bacon's Abr. Wills, &c. F.*; 4 *Johns. R.* 61; 8 *Cowen*, 273;

*Co. Litt.* 112 *b.* ; 6 *Viner's Abr.* 48 ; *Branch's Principia,* 41, 119, 125, 134, 152, 194 ; 7 *Co.* 27 ; 6 *Co.* 20 ; *Jenk. Cent.* 23, 260, 395.

The bequest of all the property on the old farm to John Jost Sidney, fortifies the construction, that the farm itself was intended to be given to him, and the charge of $500 imposed upon him by the will, also shews that such was the intention ; for otherwise, the whole of what he would receive, would not amount to $900, and that subject to the charge.

Extrinsic evidence of the intention of the testator, was properly admitted. (1 *Brown's Ch. C.* 472, 8. *Roberts on Frauds,* 20, 33. 1 *Johns. Ch. R.* 234. 2 *Vernon,* 593, 517 ; 2 *P. Wms.* 141. 2 *Atk.* 372. *Roberts on Wills,* 465. 2 *Vesey, Sen.* 216. 6 *T. R.* 671.) If there is an ambiguity here, it is *latent,* arising from extraneous circumstances, and removable by extraneous facts. (*Roberts on Wills,* 457, 466, 468. *Roberts on Frauds,* 25, *and ch. of Ambiguities at large. Powell on Devises,* 490, 492, 493, 494, 496, 499, 502, 506, 513. 2 *Ves. Sen.* 216. *Moor,* 105. 2 *P. Wms.* 136. 1 *P. Wms.* 674. 1 *Atk.* 410. 2 *Atk.* 240. 3 *Viner,* 197. 2 *Eq. Cas. Abr.* 410.)

*H. Hamilton,* for defendant. Lot No. 136, or the *old farm,* as it is called, was not devised to John Jost Sidney. All he can take by the will, is the lot in Ten Eyck's patent, the oak-hill farm, and the 19 acre lot. The description in the will, applies with perfect accuracy to the lot called Ten Eyck's patent. It lays along the Schoharie creek, is connected or belongs to the old farm, and is known by the name of Ten Eyck's patent. The rule, that the addition of a circumstance, false or mistaken, will not frustrate a grant or devise, where the thing intended to be granted or devised is already sufficiently ascertained, as laid down in 7 *Johns. R.* 217, 18 *id.* 81, and 19 *id.* 449, does not apply to this case. None of the particulars are false or mistaken, as applied to lot No. 5, in Ten Eyck's patent. All are true and correct as to that lot ; and of course it was devised, and not the old farm, which does not correspond with the description, and therefore did not pass by the will. Description is never rejected, when it is true in point of fact, and consistent with the thing devis-

ed. (11 *Johns. R.* 216.) The devise is of the testator's whole share of all the land he owned which laid along the Schoharie creek; but this general description is followed by a particular description of the land intended to be devised, viz. all the land the testator owned lying along the Schoharie creek, which was connected or belonged to the old farm, and known by the name of the Ten Eyck patent. There is, in fact, property which answers to this description in every particular, and therefore none other passes. (*5 East,* 51. *3 Atk.* 9. *8 T. R.* 579. *5 Taunt.* 322. *8 East,* 91. *3 Vesey, Jun.* 191. 11 *Johns. R.* 201.) The parol evidence of the declarations of the testator, previous to making his will, relative to his intentions, were not admissible. (*Statutes, vol.* 1, 364, *sec.* 2. 1 *Johns. Ch. R.* 231. *5 Co.* 68. 1 *Mod.* 310. *3 P. Wms.* 353. *Phil. Ev.* 410 *to* 417. 11 *Johns. R.* 201. *Roberts on Wills,* 444, *n.* 2. 1 *Vesey, Jun.* 232. *2 Vern.* 624. *8 Mass. R.* 506. *8 Vesey, Jun.* 22. *15 Vesey, Jun.* 174. *2 Scho. & Lef.* 240. *2 Vez. & Beame,* 318. *13 Vesey, Jun.* 376. *3 T. R.* 83. *2 Show.* 63.) The testimony received as to the value of the property devised in aid of the construction, also was improper. (*Phil. Ev.* 417, 18. *7 T. R.* 635. *Cowp.* 833.)

*H. R. Storrs,* on same side. The introductory part of a will, it is true, is admitted to have some effect in the construction of the subsequent devises; but the intention manifested in the introductory part, is not alone sufficient without an actual devise. It must appear, that the testator not only did not intend to die intestate, but that he did not, in fact, die intestate. (1 *Johns. Ch. R.* 478.) This is a case of *patent* ambiguity. The difficulty does not arise from extrinsic circumstances, but from the terms of the will, which is sought to be obviated by extrinsic facts, which are not admissible. (1 *Johns. Ch. R.* 234.) There is no case to be found for admitting parol evidence to show the intention upon a patent ambiguity on the face of the will. The maxim quoted in 11 *Johns. R.* 218, is the key to this whole subject, *falso demonstratio non nocet,* or, as expressed in lord Bacon's maxims, *veritas nominis tollit erroreni demonstrationis;* but here is no

false demonstration or description to enable the party to avail himself of the rule. The devise is perfect, as applied to lot No. 5. To render it false, it is necessary to assume that the testator intended to devise an estate other than that he has described. The question is one of construction, not of ambiguity. Is there a subject matter to which every part of the description applies? if there is, there is no false description, nor can any part of the description be rejected. Had the testator left no property answering the description in the will, extrinsic evidence might have been received to explain the testator's meaning; but that not being so, such evidence was wholly inadmissible. (11 *East*, 441. 3 *Taunt.* 147.)

*Bleecker*, in reply. The first description of all the land the testator owned lying along Schoharie creek, is *veritas nominis*, and includes both the old farm and lot No. 5, so that if this rule is to govern, the plaintiff must succeed. The cases cited on the other side to shew the devise void, are where the first description is so general, that without taking the further description into the account, nothing is devised. The doubt in this case, arises from applying the will to the subject matter, (the property of the testator,) which he declared his intention to devise; arising, therefore, from extrinsic facts, it may be explained by extrinsic testimony.

*By the Court*, SAVAGE, Ch. J. The plaintiff avers that there is a latent ambiguity in the will of the testator, which must be explained by parol proof; while it is contended by the defendant, that the will is free from ambiguity, and at all events, that the testimony of the scrivener who drew the will, cannot be admitted.

The numerous cases found in the books, many of which were cited upon the argument, are not easily reconcileable. An attempt to reconcile them does not, however, appear to me necessary to a satisfactory decision of this cause. The rule itself is not controverted, that if there exists a latent ambiguity, parol evidence is admissible; for as it is produced by parol proof, it must be dissolved in the same way. (1 *Johns. Ch. R.* 234.)

Latent ambiguities, says Mr. Justice Story, may be removed by parol evidence, for they arise from the proof of facts *aliunde ;* and when the doubt is created by parol evidence, it is reasonable that it should be removed in the same manner. But if the ambiguity appears upon the face of a will, or any written instrument, extrinsic evidence cannot remove the difficulty without making a new instrument. Mr. Roberts, in his *Treatise on Wills,* (2d vol. 267,) says : " There is no rule which stands on a surer principle than this : that parol evidence is never to be admitted where there is no ambiguity to call for explanation, and where the will may operate according to the words, without any foreign help."

The extent of the rule, as found in the books, is clearly stated by the late chancellor Kent, (1 *Johns. Ch. R.* 234,) that parol proof cannot be admitted to explain the intention of the testator, except in two specified cases : 1. Where there is a latent ambiguity arising *dehors* the will as to the person or subject meant to be described ; and 2. To rebut a resulting trust. The ambiguity in this case exists, if at all, in the subject matter of the devise. The testator devises *all the land he owns which lies along the Schoharie creek, which is connected or belonging to the old farm, and known by the name of Ten Eyck's patent.* In proof, it appears that he owned a lot of land adjoining the old farm, in Ten Eyck's patent, but it does not answer the rest of the description : *all the land I own which lies along the Schoharie creek.* The Ten Eyck's patent lot was not originally any part of the old farm, and is but a small part of the estate in the occupancy of the testator at his death. If the old farm itself is not disposed of by this devise, it is not disposed of at all. A question arises, therefore, whether it was not the testator's intention to devise the whole of the old farm to his nephew, J. J. Sidney. The fact that the testator left no property corresponding with the property described in the will, appears from proof *aliunde.* It is reasonable, therefore, that parol proof should be resorted to by way of explanation. The parol testimony given by M'Carthy, who drew the will, shews clearly that the testator's intention was to devise the whole farm to J. J. Sidney ; but the ambiguity arose from his misapprehension. This testimony is ob-

jected to. In cases of latent ambiguity, I do not observe in the books any exclusion of this kind of proof, (the declarations of the testator.) The cases where such declarations or instructions have been excluded, are cases where there was no ambiguity at all ; but an attempt was made to shew a mistake in drawing the will. *Brown* v. *Selwin,* (*Talbot's Cases,* 240,) is one instance of this class of cases. Independent of the testimony of M'Carthy, it must have been the testator's intention to devise his whole farm to J. J. Sidney. He professes to dispose of that worldly estate wherewith God had blessed him. He gives *all the land he owns lying along the Schoharie creek ;* and that creek runs directly through lot No. 136, called the old farm : *all which is connected or belonging to the old farm.* The Ten Eyck lot was a mere appurtenance to the old farm, and does not satisfy the terms, *all which belongs to the old farm.* The words used convey to the mind an intention to devise the *old farm* itself. This construction is confirmed by all the extraneous circumstances of the relationship existing ; by the fact that the testator and devisee had always lived as father and son, in the same family ; that the devisee was a favorite nephew, and that the testator gave him all his farming utensils and farming stock.

Without reference to the latter part of the description in this devise, there could be no difficulty in locating the subject matter of the devise ; and in such cases it is well settled, that the latter words of description may be rejected. Not so, however, if they are words of restriction.

In *Goodtitle* v. *Paul,* (2 *Burr.* 1089,) the testator says : "I give to my wife my farm at Bovingdon, in the tenure of John Smith." The fact was, that about six acres of the farm were in possession of the testator, and the residue in the possession of John Smith. Lord Mansfield says, that the words "in the tenure of John Smith," could not be understood as a restriction ; they were an additional description, which does not vitiate, if false. In *Goodright* v. *Pears,* (11 *East,* 58,) the testator devised to his wife "all his copyhold, cottage and premises then in his own possession." Part of the premises were not in his own possession ; but the court held that the previous words were sufficient to convey the "copy-

hold, cottage and premises." The case of *Wilson* v. *Mount*, (3 *Vesey*, 191,) seems to me somewhat similar, and yet the decision was the other way. The testator devised several estates, freehold and copyhold, whereof he should die possessed, and added in a parenthesis, (the copyhold part whereof I have surrendered to the use of my will.) The master of the rolls considered these words restrictive. *Gascoigne* v. *Barker*, (3 *Atkyns*, 8,) was like this case, and supports the decision. The case of *Gootille* v. *Southern*, (1 *Maule & Selwyn*, 299,) is more like the case under consideration. The devise was thus : "I give and devise *all* that my farm, lands and hereditaments, called *Trogue's farm*, situate, &c. *now in the occupation of A. Clay*." The farm called Trogue's farm was in the occupation of A. Clay, but the closes in question were in possession of one Marsden. Lord Ellenborough says, it is clear that he (the testator) meant to pass all which was called Trogue's farm, which is a plain and certain description, and the defective description of the occupation will not alter the devise.

There are some cases in our own court which establish the same doctrine. In *Jackson* v. *Clark*, (7 *Johns. R.* 228,) Spencer, justice, speaking of the rules of construction of deeds, lays down this proposition : "If there are certain particulars once sufficiently ascertained, which designate the thing intended to be granted, the addition of a circumstance, false or mistaken, will not frustrate the grant." And the court, in that case, held a deed good, although the lot was described as being in the 12th, instead of the 21st general allotment of the Kayaderosseras patent. In *Jackson* v. *Sill*, (11 *Johns. R.* 212,) the subject was much discussed by Chief Justice Thompson, who delivered the opinion of the court. The devise there was this : "I give, devise and bequeath unto my beloved wife, for and during her widowhood, *the farm which I now occupy*. The premises claimed had been parcel of the farm of the testator ; but when the will was made, and when the testator died, they were in the occupancy of one Salisbury, under a lease for seven years, and comprised ninety acres of land, with house, barn and necessary improvements, for a farm by itself. It was held the premises did not pass by

the devise. The occupancy by the testator being matter of description, without the words, *which I now occupy*, the subject matter of the devise could not be located ; there was no ambiguity which required extrinsic aid to explain it. The cases to which I have referred are in that case cited and commented upon at length. The chief justice, in conclusion, adopts the rules which I have already stated : that a latent ambiguity may be explained by extrinsic evidence ; and that if there is a certain description of the person or thing devised, and a further description is added, it is immaterial whether the superadded description be true or false. The same point was again decided in *Jackson* v. *Loomis*, (18 *Johns. R.* 84, and 19 *id.* 450, *S. C. in error.*)

If I am correct, therefore, in assuming that the subject of the devise in question was sufficiently described without the superadded description, " and known by the name of Ten Eyck's patent," then clearly the plaintiff is entitled to recover.

Judgment for plaintiff.