## DODGE *vs.* POTTER and ALLEN.

Parol proof of extrinsic circumstances may be given, to apply a description to its subject matter; and if it appears that the description is in some respects erroneous, those parts may be rejected, and what is left, if sufficient of itself, alone be regarded.

A chattel mortgage recited an indebtedness of the mortgagor to the mortgagee in the sum of $2809.41, the amount of two promissory notes made by the mortgagor and indorsed by the mortgagee, which the latter had taken up and paid, and for the indorsement of another note to K., for $1000. *Held,* that parol evidence might be received, to show that another note, for $600, made by the mortgagor, was one of the notes referred to in, and secured by, the mortgage, although such note was not indorsed by the mortgagee; it appearing that the note was payable to the order of one B., who indorsed the same, and it was discounted by the mortgagee.

*Held also,* that a paper upon which a computation of the amount of the three notes was made, at the time of executing the mortgage, was one of the extrinsic circumstances admissible upon the question of identity.

The filing of a chattel mortgage by a clerk in the store of the town clerk, having charge of the town clerk's office in the absence of that officer, is valid.

It being the duty of the town clerk, and not of the mortgagee, to number chattel mortgages, the rights of the mortgagee will not be impaired by the omission to perform that duty.

Where a chattel mortgage described, among other property mortgaged, "one four-horse post coach called 'Steuben,' and another called 'Mayday,' at H., employed in staging," it appearing that the mortgagor, at the time the mortgage was executed, owned and possessed only two four-horse post coaches, one called "Conhocton" and the other called "Mayday," and that there was no coach called "Steuben" at H. or employed in staging there; *Held*, that parol evidence was admissible, to show that the coach named Conhocton was intended to be included in the mortgage, instead of the Steuben.

THIS action was for the wrongful taking and converting of a four horse post coach; the plaintiff claiming title by virtue of a chattel mortgage executed by one L. Seymour, and the defendants justifying the taking and conversion under a judgment in favor of the defendant Potter against Seymour, the mortgagor. The defendant Allen, being sheriff of the county of Steuben, levied upon the property by virtue of an execution issued on the judgment, and sold it by the direction of Potter. The cause was tried at the Steuben circuit in May, 1853, before Justice Welles. Seymour was examined as a witness by the plaintiff, and proved the execution of the mortgage at the time it bore date, November 22, 1850. Among other property embraced in the mortgage was "one four-horse post coach called Steuben, and one four-horse post coach called Mayday." The mortgage recited that the mortgagor was indebted to the plaintiff in the sum of $2809.41, for the amount of two promissory notes made by the former and indorsed by the latter, which the plaintiff had taken up and paid, and for his indorsement of Seymour's note for $1000 to George Knapp. And it provided that if Seymour should pay to the mortgagee the sum of $2809.41 and interest, on or before the first day of January then next, the mortgage should be void and of no effect. Seymour was examined as a witness, and testified that he executed the mortgage at the time it bore date; that the consideration for it was the indorsement by the plaintiff, for him, of three notes, two of $1000 each and one of $600,

Dodge v. Potter.

amounting, with interest, to $2809.41 at the time the mortgage was given; that the note he then held in his hand was one of the $1000 notes; it was dated May 9, 1849, and made for his benefit, payable at the Steuben County Bank, and indorsed by Ralph Babcock and the plaintiff. The note was then read in evidence. The note for $600 was then produced and identified by the witness. It was not indorsed by the plaintiff.

The proof of this note as evidence was objected to by the counsel for the defendants, upon the ground that as the note was not indorsed by the plaintiff, the proof tended to change the consideration mentioned in the mortgage. The objection was overruled by his honor the justice, and the counsel for the defendants excepted to the decision. The witness then further testified, "This note is dated January 25th, 1849, payable at Corning Bank, 60 days from date. I made this note to the order of Ralph Babcock, and the bank could not let me have the money, and the plaintiff gave me a check on the bank for the amount of the note less the discount." The plaintiff's counsel then offered to read the note in evidence. The defendant's counsel objected, for the reason that the note tended to change the consideration mentioned in the mortgage. The court overruled the objection. The counsel for the defendants excepted to the decision, and the note was read in evidence. The witness further testified, as follows: "The other $1000 note was given by me to George Knapp and was indorsed by the plaintiff. I never paid either of these notes. I was present when the mortgage was drawn, and the amount due on the notes computed. This paper I hold in my hand is the paper upon which it was done, by Mr. Irvine." (The witness held in his hand a piece of paper covered with figures, purporting to be a computation of the amount of the three notes, and referred to at the time the mortgage was executed.) The plaintiff's counsel offered the papers so referred to, in evidence. The counsel for the defendants objected to its reception as evidence, upon the ground that it was immaterial and irrelevant. His honor the justice overruled the objection and admitted the paper to be offered in evidence, to which decision the counsel for the defendants excepted.

Wm. Terbell, a witness on the part of the plaintiff, then testified: "I reside in Corning, and was town clerk of that town in 1850. This book which I hold in my hand is the register book of mort-gages for that town, kept by the town clerk. I saw this mort-gage on the files in my office a number of times in the year 1850. The indorsement of the filing is in the handwriting of a clerk of mine, P. H. Burnap. I kept the office in my drug store. He was my clerk at the time this mortgage purports to have been filed. This mortgage is on the register book as of date November 22d, 1850, and it corresponds with the filing on the mortgage. The entry in the registry book is also in the hand writing of my clerk, Mr. Burnap. I don't recollect where I was when this mortgage was filed." The counsel for the plain-tiff here proposed to show, by the witness, that the clerk Bur-nap had general directions from the witness to attend to the duties of the town clerk's office, when witness was not present. This evidence was objected to by the counsel for the defendants, upon the ground that a town clerk had no power or authority to appoint a deputy; and upon the further ground that the instruction or authority must refer to this particular mortgage, if any such was given. The objection was overruled by the justice, and the counsel for the defendants excepted. The wit-ness then further testified, "My clerk had general directions to attend to the business when I was not there. He had general directions from me to do the duties of the office. He sometimes did it when I was there. I was town clerk in 1851. The filing on this copy of the original mortgage is in my handwriting. It was filed on the 21st November, 1851. The signature to the statement of the amount due, indorsed on this copy mortgage, is the signature of the plaintiff." The plaintiff's counsel then offered in evidence the original mortgage referred to by the witnesses, Seymour and Terbell. To which the counsel for the defendants objected, for the reasons, (1st.) That said mortgage was not properly filed, the evidence being that the filing was done by a clerk in the drug store of the witness, Terbell. (2d.) That said mortgage was not numbered, according to the requirements of the statute. (3d.) That the consideration in

Dodge *v.* Potter.

the mortgage had not been sufficiently proven. The objections were severally overruled by his honor the justice, the mortgage admitted to be read in evidence, and an exception taken to such decisions, severally, by the counsel for the defendants.

The mortgage was then read in evidence. It was indorsed, "Received and filed November 22, 1850. Wm. Terbell, pr. Burnap." The plaintiff also offered and read in evidence a copy of the original mortgage, with a statement indorsed thereon by the plaintiff of the amount due, ($2635.21,) which copy was dated November 21, 1851, and filed and registered in the town clerk's office, the same day. Seymour further testified that at the time of the execution of the mortgage he owned two four-horse post coaches, the Conhocton and the Mayday; that they were then at Hornellsville, or on the road from there to Andover; and that he had no other four-horse post coaches then at Hornellsville.

The counsel for the plaintiff here offered to prove by Seymour, that at the time of the execution by him of the mortgage to the plaintiff, he (the witness) was the owner of but two four-horse post coaches at Hornellsville; that he was not at that time the owner of, nor did he have in possession, any four-horse post coach called "Steuben," nor was there any such coach called "Steuben" at Hornellsville, or employed in staging there; that the defendants were advised of this mistake in the name of the coach before the taking of the property; that the only four-horse coaches which the mortgagor had at Hornellsville were the "Mayday" and "Conhocton." The defendants' counsel objected to this evidence, on the ground that parol evidence could not be given to vary or explain the mortgage, and that in no case could a mistake be corrected in a written instrument. His honor, the justice, overruled the objection and received the evidence. To which decision the counsel for the defendants excepted. The witness then further testified: "George A. Knapp was my agent at Hornellsville. I was not, from October to February, the owner of any such coach as the 'Steuben,' and did not have any such coach in my possession; there was no such coach about that time employed in staging at Hornellsville. At the time of

the execution of this mortgage, the coach 'Express' was running from Bath to Corning. I run the 'Conhocton' and 'Mayday' on the Bath and Corning road, after they left Hornellsville in February, up to the spring of 1852. I run them myself until they were sold, the fore part of December, 1851. I was present when the defendants were engaged in selling one of the coaches in December, 1851; it was at sheriff's sale; the four-horse coach 'Conhocton' was sold at that sale. At the time of the sale there was a good deal said by the plaintiff and defendants. The plaintiff claimed the property by virtue of a personal mortgage. Previous to the day of the sheriff's sale, I had heard that they relied on holding the property, on account of there being a mistake in the name of the coaches. I told the defendant, Allen, that I had no interest in the coach 'Steuben' since May, 1850. There was a good deal of conversation about it, previous to and on the day of sale." Here the plaintiff's counsel offered to prove that before the sale, this witness gave notice to the defendants that the plaintiff claimed that the coach "Conhocton" was embraced in the mortgage, and that "Steuben" was inserted by mistake. The defendants' counsel objected to such evidence being given. The court overruled the objection, and the defendants' counsel excepted to the decision. The witness then continued. "I told Mr. Allen I had had no coach 'Steuben.' He said Potter had indemnified him, and he must do as directed by him, and that we had better settle. Dodge and Potter and I went into a room to settle, but did not settle. Mr. Allen sold the coach 'Conhocton,' Potter standing by in frequent conversation with his son. His son and Uri Balcolm seemed to be the principal bidders. The coach was struck off to Balcom. Previous to the sale, and on the day of sale, I heard a conversation between the plaintiff and defendant Potter, in regard to the property. The plaintiff claimed it by virtue of a mortgage. Potter said he understood it, and he knew what he was about. I heard Potter tell Allen to go on and sell." George A. Knapp testified, that he was at Corning in the spring of 1850, in the employ of Seymour; that he loaned a sum of money to Seymour in 1849. Seymour owed the witness $400, and the latter let

him have $600 more, and took his note for $1000. Dodge in-dorsed the note and paid it. The witness was at the sale of the coach "Conhocton." He took the "Conhocton" and "Mayday" to Hornellsville, to run for Seymour, when they first went there. It was October 25th, 1850; he ran there until February after; during that time the "Steuben" was not there to his knowledge. The plaintiff's counsel having rested, the defendants' counsel offered and read in evidence, 1. The record of a judgment in the supreme court, Steuben county, in favor of the defendant, Hiram Potter, against Lorenzo Seymour, for damages and costs, $202.14. Record filed and judgment docketed in Steuben county clerk's office, October 13, 1851. 2. An execution in due form of law, issued to the sheriff of Steuben county, on above described judg-ment, dated October 13, 1851, with a levy thereto attached, upon (among other property) "one post coach 'Conhocton.'" Exe-cution returned satisfied, December 8th, 1851, and filed in Steuben county clerk's office, March 31, 1852. The defendants' counsel then moved the court to nonsuit the plaintiff, upon the grounds, (1.) That the mortgage was not sufficient to convey to the plain-tiff the title to the coach "Conhocton." (2.) The mortgage having been filed by a person other than the town clerk, was not properly in evidence. (3.) The mortgage was not numbered according to the requirements of the statute. (4.) There was no proof of the consideration mentioned in the mortgage; the $600 note having been indorsed by the plaintiff; and the property remaining in possession of the mortgagor, it was void as against Potter, a subsequent judgment creditor. The court overruled the motion, and the counsel for the defendants excepted. The justice charged the jury that the legal effect of the mortgage deducible from its terms, in connection with the parol testimony of surrounding circumstances, which by showing the sense of the parties, might authorize a larger or more restricted construction of the mortgage, so as to exclude or include the coach "Conhoc-ton," was a question for the jury to decide; that is to say, it was the province of the jury to determine what the parol evi-dence proved; and if they believed, from the proof, the mortgagor did not own the coach "Steuben," but did own the other two

coaches, there was no other way of giving effect to the mortgage than by rejecting the name "Steuben," and construing the mortgage as embracing the post coach "Conhocton;" and the court, as a question of law, advised and directed the jury so to do.   To which opinion and decision the counsel for the defendants excepted.   The said justice further charged the jury, that if, under the foregoing directions, they should find for the plaintiff, the measure of damages would be the value of the coach "Conhocton," and interest thereon, from the time of the taking to the time of the trial, unless they believed the said coach was bid off by said Uri Balcom for the benefit of the plaintiff; in which case the plaintiff could not recover a sum exceeding the amount paid by Balcom therefor at the sheriff's sale, with interest from the same time.   To which opinion and decision the counsel for the defendants excepted.   The counsel for the defendants asked said justice to charge the jury, as follows : 1. That the plaintiff had failed to show a sufficient consideration for the mortgage, inasmuch as it appeared from the evidence that one note of $600, alleged to be part of the consideration of the mortgage, had not been proved.   2. That if the jury believed there was included in the mortgage, for consideration, a note for $600 indorsed by the plaintiff, which did not in fact exist, it was an indication of fraud, which the jury were to consider and pass upon.   3. That if the jury, from the language of the mortgage in connection with the parol evidence, found that the post coach "Conhocton" was not included in the mortgage, they must find for the defendants. 4. That the mortgagor had an interest in the property while it continued in his possession, which was liable to be sold on execution.   5. That if the mortgage did not sufficiently describe the post coach "Conhocton," to fairly give notice to or put third persons upon inquiry, then it was not sufficient as against the defendants to pass the coach "Conhocton."   6. That the coach "Conhocton" was not sufficiently described to give notice to purchasers·in good faith, or the creditors of Seymour, and the mortgage was therefore insufficient to pass the title to that coach, as against the defendants.   The justice refused so to charge, and the counsel for the defendants excepted.   The jury

found a verdict for the plaintiff for $275.28 damages, and the defendants, upon a bill of exceptions, moved for a new trial.

*H. M. Hyde,* for the plaintiff.

*H. Hunter,* for the defendants.

*By the Court,* T. R. Strong, J. The evidence which was received, that the $600 note was one of the notes referred to in and secured by the chattel mortgage, was properly admitted. The mortgage recites an indebtedness of the mortgagor to the mortgagee in a certain sum, the amount of two promissory notes made by the mortgagor and indorsed by the mortgagee, which the latter has taken up and paid, and for the indorsement of another note, and provides for the payment of that indebtedness. This note for $600 was not indorsed by the mortgagee, and the objection to the evidence was that it would tend to change the consideration mentioned in the mortgage. The evidence showed that the note was made by the mortgagor, and was payable to the order of another person, who indorsed the same; that the mortgagee discounted the note; and that the amount due upon the note was computed and embraced in the indebtedness specified in the mortgage. It is a familiar rule, that parol or verbal proof of extrinsic circumstances may be given, to apply a description to its subject matter, and that if it appears the description is in some respects erroneous, those parts may be rejected, and what is left, if sufficient of itself, alone be regarded. (*Fish* v. *Hubbard,* 21 *Wend.* 651. *Dunning* v. *Stearns,* 9 *Barb.* 630. *Doe* v. *Roe,* 1 *Wend.* 541. *Loomis* v. *Jackson,* 19 *John.* 448. *Jackson* v. *Clark,* 7 *Id.* 218. *Cowen & Hill's Notes,* 1377, 1405. 1 *Greenleaf's Ev.* § 285 *to* 288. *Atkinson's Lessee* v. *Cummins,* 9 *How.* 479.) Within that rule the evidence received was proper. The following cases appear to me to be directly in point : *Pierce* v. *Parker,* (4 *Metcalf,* 80 ;) *Johns* v. *Church,* (12 *Pick.* 557 ;) see *Cowen & Hill's Notes,* 1423, 4, 5.

The paper upon which the computation was made was one of the extrinsic circumstances, admissible upon the question of iden-

tity. The objection to the reading of the mortgage in evidence, and the motion for a nonsuit, for the reasons that the mortgage was filed by a person other than the town clerk, and that it was not numbered, were not well taken. The filing by a clerk in the store of the town clerk, in charge of the town clerk's office, in the absence of that officer, was sufficient. (*Bishop* v. *Cook*, 13 *Barb.* 326.) It was the duty of the town clerk, and not of the mortgagee, to number the mortgage. (*Laws of* 1849, *p.* 105.) The rights of the mortgagee could not be impaired by the omission to perform that duty.

The evidence that the coach named " Conhocton," for the taking of which this action was brought, was included in the mortgage, was admissible. The mortgage describes, among other property, " one four-horse post coach called ' Steuben,' and another called ' Mayday,' after which is added, ' all at Hornellsville, employed in staging.' " It was proved that the mortgagor, at the time the mortgage was executed, was not the owner, or in possession of but two four-horse post coaches, one called " Conhocton," the other called " Mayday," and that there was not any coach called " Steuben" at Hornellsville, or employed in staging there. The proof was objected to, on the ground that parol evidence could not be given to vary or explain the mortgage, and that the mistake could not be corrected. I am satisfied it was competent, within the rule above stated, in regard to applying by verbal proof a description to the subject described, and rejecting erroneous particulars.

The allowance of evidence that the defendants were informed, before the sale, of the mistake as to the name of the coach, cannot have produced any injury to the defendants.

The charge to the jury in regard to what coach was included in the mortgage, rejecting the first branch of it, which is explained in what follows, did not differ in its legal positions from the views herein expressed ; the law was properly stated, and it was left for the jury to find the facts.

Upon the evidence as it stood, the instruction embraced in the second request was properly declined. There was no basis for such a belief as is therein referred to. The third request was

erroneous, as it in part called for the submission to the jury of a question as to the construction and effect of the terms of the mortgage, which was matter of law, and belonged to the court. The matter of the fifth request was not proper for the jury.

All the points relied on upon the argument have now been considered, and my conclusion is that the motion for a new trial should be denied.

New trial denied.

[CAYUGA GENERAL TERM, June 5, 1854. *Johnson, T. R. Strong* and *Welles,* Justices.]