*NEW-YORK,*
*May, 1820.*

JACKSON
*v.*
LOOMIS.

————◦✳◦————

JACKSON, *ex dem.* M'NAUGHTON, *against* LOOMIS.

EJECTMENT to recover part of lot No. 50. in the se-
cond division of the *Cambridge* patent, tried at the *Wash-
ington* circuit, in 1819.

The plaintiff gave in evidence a mortgage, bearing date
the 15th of *August*, 1810, executed by *James Wells*, to the
lessor of the plaintiff, registered on the 21st of *August*,
1810, in which the premises were described as follows:
"All that certain piece or parcel of land, lying and being
in the town of *Cambridge*, in the county of *Washington*,
and state of *New-York*, being part of lot No. 51. of the
second division of a patent granted to *Isaac Sawyer* and
others, in the town of *Cambridge* aforesaid, in the said coun-
ty, and bounded as follows, to wit: Beginning at a stake
and stones, standing on the south line of the said lot, nine
chains and fifty-two links and an half westerly from a stake
and stone standing near a marked pine tree; from thence
running south eighty-eight degrees, and thirty minutes
west, four chains eighty-one and a half links, to a stake and
stones, thence north, one degree and thirty minutes east,
eight chains, to a stake and stones, thence south eighty-

*Where the
premises in a
deed were de-
scribed as lot
No. 51. in the
second division
of a patent,
" bounded as
follows, be-
ginning at a
stake and
stones," &c.
giving monu-
ments, courses,
and distances;
and it was
proved, that
the grantor, at
the time of the
conveyance,
owned lot No.
50. in the same
patent, and
that the monu-
ments, courses,
and distances,
exactly corres-
ponded with
those found on
the land, and
that unless this
land was con-
veyed by the
deed, it would
be inoperative,
and of no ef-
fect: Held,
that the words
" lot No. 51,"*

might be rejected as surplusage, the description of the premises being sufficiently certain with-
out those words: if there is a contradiction in a description, that part of it is to be taken which
gives most permanence and certainty to the location.

eight degrees, thirty minutes west, twenty chains to a stake and stones; thence north, one degree and thirty minutes west, nineteen chains to a stake and stones; thence eighty-eight degrees and thirty minutes east, twenty-four chains and eighty-one links and an half to a stake and stones; thence south one degree and thirty minutes east, twenty-seven chains to the place of beginning, containing fifty-one acres of land, be the same more or less." The mortgage was given to secure the payment of 500 dollars, with interest, in twelve months.

The plaintiff then gave in evidence a deed, dated the 14th of *August*, 1810, from *Sidney Wells* and *Solomon Wells*, to *James Wells*, for 104 acres of land in *Cambridge*, described as part of lots No. 5 and 50 of the second division of *Cambridge* patent. A deed produced by the defendant, pursuant to notice for that purpose, dated the 1st of *May*, 1812, executed by *Edmund Wells* and *James Wells*, to the defendant, by which the grantors, in consideration of 1675 dollars, conveyed to the defendant two lots or parcels of land, the first described as situate in *Cambridge*, and being part of lot No. 50. of the second division of the *Cambridge* patent, containing 16 acres more or less; and the second of which lots, or parcels, described as being part of lot No. 50. in the said patent, and bounded *verbatim* as the premises in the mortgage above mentioned, from *James Wells* to the lessor of the plaintiff, are described, containing fifty-one acres of land, more or less; of which premises the defendant was proved to be in possession.

*James Gillis*, a surveyor, testified, that shortly before the trial, he found a lot in *Cambridge* patent, corresponding with the description of the premises in the mortgage from *James Wells* to the lessor of the plaintiff, as to courses and distances; that he had made an actual survey of the lot, and found the monuments, as mentioned in the mortgage at every corner of the lot except one, at the distances mentioned in the mortgage. That on his return from the survey of the lot, he met the defendant, who asked why he did not let him know of the survey; saying, that the lot which the lessor claimed, was different from the one of which he had a deed.

All the evidence for the purpose of showing that the premises described in the mortgage, were intended to be conveyed as part of lot number 50, in the *Cambridge* patent, was objected to by the defendant's counsel, but the objection was overruled by the judge, who charged the jury, that from the evidence, there could be no doubt that the mortgage covered the fifty-one acres of land, purchased by the defendant from *Edmund Wells* and *James Wells;* that the registry of the mortgage was legal notice to the defendant of the plaintiff's lien ; that he consequently purchased subject to the mortgage ; and that the money being due on the mortgage, the plaintiff was entitled to recover; the jury, accordingly, found a verdict for the plaintiff. It was agreed that either party might turn the case into a special verdict.

A motion was made to set aside the verdict, and for a new trial.

*Wendell,* for the defendant, contended, that no estate passed by the mortgage, as the premises claimed at the trial were not comprehended by the description in the deed of mortgage. The plaintiff was bound to show that the premises composed part of lot No. 51, and that it corresponded with the metes and bounds given in the mortgage. There are numerous lots, containing equal quantities of land, the courses and distances of which precisely correspond, and they are to be distinguished by their numbers. If the number of the lot is rejected, there is nothing by which to locate it. (7 *Johns. Rep.* 221. *Sheph. Touch.* 247. 3 *Bl. Com.* 381.)

Again ; the plaintiff proved no notice, actual or constructive, of the *lien* on the land. It ought to be clear and positive, not resting in conjecture. That lots are known and distinguished by their numbers appears from various acts of the legislature. (8 *Johns. Rep.* 141.)

*Z. R. Shepherd,* contra, insisted, that the number of the lot was not a necessary part of the description, if there is enough without it to ascertain the land conveyed. Now, the mortgage contains the whole description, the exact

NEW-YORK,
May, 1820.

JACKSON
v.
LOOMIS.

NEW-YORK, courses, distances and monuments, except the mere num-
May, 1820. ber of the lot. (7 *Johns. Rep.* 223. 4 *Mass. Rep.* 196.)

JACKSON          The registry of the mortgage was legal notice to subse-
v.
LOOMIS. quent purchasers, of the existence of the incumbrance.

SPENCER, Ch. J. delivered the opinion of the Court. The question is, whether the mis-description of the lot, in which the premises are situate, it being described as lot No. 51, when, in fact, it was lot No. 50, is fatal to the plaintiff's mortgage ; or, in other words, whether the premises of which *Wells* was seised, and which he undoubtedly intended to mortgage, passed to the lessor ? In *Jackson* v. *Clark,* (7 *Johns. Rep.* 223.) we had occasion to examine and decide upon the principles applicable to the descriptive parts of a deed. The opinion then expressed was this : " if there are certain particulars once sufficiently ascertained, which designate the thing intended to be granted, the addition of a circumstance, false or mistaken, will not frustrate the grant. But when the description of the estate intended to be conveyed includes several particulars, all of which are necessary to ascertain the estate to be conveyed, no estate will pass, except such as will agree to every part of the description ;" and cases were referred to, illustrative of the rule. The governing consideration in all cases upon the construction of deeds, is, to give effect to the intention of the parties, if the words they employ will admit of it. In the case then under consideration, the premises were described, as " lot No. 1. of the smaller lots into which lot No. 3. of the subdivision of lot No. 10. in the 12th general allotment of the patent of *Kayaderosseros* is subdivided, beginning at a hemlock tree, marked No. 2 and 3, being the north west corner of lot No. 2. of the said subdivision, and standing on the easterly bound of lot No. 9. of the said allotment," giving other monuments, such as stakes and heaps of stones. In point of fact, the lands intended to be conveyed were in lot No. 1. of the subdivision of lot No. 3. in the division of great lot No. 10. in the 21st allotment of the patent ; and it appeared that there was a lot No. 10. in the 12th allotment of the patent, but that it had never been subdivided. We held that the plaintiff was entitled to recover,

on the ground that the premises were sufficiently described, without reference to the general allotment, and that it was the addition of a false or mistaken circumstance, which did not affect the grant; and we laid great stress upon the facts, that the courses and distances of the lot sued for, precisely agreed with those given by the deed, and that the marked hemlock tree, and the stakes and stones were found, as required by the courses and distances. The case of the executors of *Worthington* v. *Hylyer*, (4 *Tyng's Mass. Rep.* 146.) was referred to, as containing just and sound doctrines on this subject. In that case, the description was erroneous in several important particulars. The description was, " all that my farm of land in *W.* on which I now dwell, being lot No. 17. in the first division of lands, there, containing one hundred acres, with my dwelling house and barn thereon standing, bounding west on land of *J. C. northerly*, by a pond, easterly by lot No. 18, and southerly by lot No. 19, having a highway through it." There was a lot, No. 17, bounded precisely as the description was; yet it was decided, that as the deed specified the grantor's farm on which he then lived, with his dwelling house and barn thereon, although the dwelling house and barn were not on lot No. 17, that description was sufficient to ascertain the estate intended to be conveyed, it appearing that two other adjoining tracts, in all amounting to 300 acres, were the property, and in the occupation of the grantor, when he gave the mortgage. The Court rejected the description of the number of the lot, because the description was sufficiently certain without it; and because, if it was considered as part of the description, the deed would be void; and that the lot was mentioned as descriptive of the farm, and not the farm as descriptive of the lot. In *Doe, ex dem. Connolly*, v. *Vernon & Vyse*, (5 *East*, 51.) all the cases are collected, and well commented on. In the present case, there is sufficient certainty by which to ascertain the land granted, independently of the number of the lot. It is to be a piece or parcel of land, lying in the town of *Cambridge*, and county of *Washington*, beginning at a stake and stones, nine chains, fifty-two links and a half westerly from a stake and stones standing near a marked

pine tree, and thence running, &c. Now, the stake and stones, the marked pine tree, and the courses and distances, and stations given, are shown, in point of fact, to correspond exactly with the description in the deed. We have a right to presume, either that these monuments were erected by the parties prior to the conveyance, and with a view to it, or that they went on to the land, and ascertained them to be there ; and that the premises were then surveyed out under the inspection of the parties. These monuments are part of the description, and a much more important part than the expressions in the deed, " being part of lot No. 51, in the second division of a patent granted to *Isaac Sawyer* and others." Indeed, I consider the number of the lot no more important than the fact asserted, that the patent was granted to *Isaac Sawyer* and others; and suppose that this part of the description was untrue, that it had been granted to *John Sawyer*, or to any other person, surely that mistake would not avoid the grant. It seems to me that no one can doubt the real intention of the parties, to have the premises in question included in the mortgage ; and if we reject the number of the lot, the premises are fully described, by the facts, that *James Wells* was seised of these lands when he gave the mortgage ; that the monuments referred to in the deed are found on this land; that the courses and distances from one monument to another, precisely agree with those called for by the deed ; and that unless the deed conveys this land, it is inoperative and void. On the latter consideration, Lord *Hardwicke* laid great stress, in *Gascoign and others* v. *Barker*, (3 *Atk. Rep.* 9.) There is another principle applicable to the case. Here is a flat contradiction in the description, and then we ought to take that which is most stable and certain. This lot may have obtained its number from reputation merely ; and in point of certainty, the number holds no comparison with the monuments. If courses and distances are given to reach an object, and if they will not reach it, you must go to the object, as the most certain. My opinion, therefore, is, that the premises in question passed by the mortgage to the lessor of the plaintiff; and, in the language of Chief Justice *Parsons*, the lot was mentioned as descriptive of the land

to be conveyed, and not the land as descriptive of the lot. The reference to the lot is mere description. It was a mistake; but there are other and more certain objects of description amply sufficient to ascertain the land granted.

If the premises passed by the mortgage, then the title of the mortgagee cannot yield to that of a subsequent purchaser. The rules of construction upon this deed must be the same, whether the mortgagor afterwards conveyed it or not. It is impossible to believe, that had the defendant resorted to the registry of mortgages, and there found a mortgage from *James Wells* to the lessor of the plaintiff, and had read the whole description, but that he must have known that it was for the very land he was purchasing; for who ever heard of a perfect similarity of description, as to monuments, courses, distances and quantity, without being struck with the conviction, that if the land were situated in the same town, were pretended to be owned by the same man, and lay in the same patent, that they were not two tracts, but one and the same? I am of opinion, the plaintiff must have judgment, and that is the opinion of the Court.

NEW-YORK,
May, 1820.

Judgment for the plaintiff.