### ALLERTON v. JOHNSON.(a)

A conveyance of land, or contract for its sale, is to be construed by its distinct and visible boundaries and monuments as marked or appearing on the land, in preference to quantity, map, or a reference to a previous deed.

Thus, where an agreement for the sale of land and its conveyance at a future day, described it as forty acres on the east end of lot four, being all the land deeded to

(a) This and two cases subsequently reported, were heard at a special term held at the court house in the village of Ithaca, on the 4th Monday of September, 1845; for the Sixth Judicial Circuit ; the office of Circuit Judge and Vice-Chancellor in that circuit being vacant.

the vendor by P. S., and bounded by a river on the east, by P.'s land on the west, by the old P. farm on the north, and by the vendee's land on the south; and it turned out that there were fifty-four acres within the boundaries last mentioned; it was *held*, that the vendee was entitled to all the land within those bounds, although the deed from P. S. contained only forty acres.

It is no objection to enforcing the performance of a contract for the sale of the lands, in behalf of the vendee, that the vendor did not own the lands when the contract was made. If he can make a good title to all at the time of the decree, the court will direct him to convey the whole; if he can make title to a part only, the vendee may take such part with a compensation for the residue.

Ithaca, September 22; October 10, 1845.

THE bill was filed for the specific performance of an agreement, by which the defendant covenanted to sell and convey or procure to be conveyed, to the complainant, a tract of land in Triangle, Broome county, on receiving four hundred dollars, at a day stipulated. The contract described the land as being " forty acres on the east end of lot number four, being all the land deeded to the party of the first part," (the vendor,) " by Peter Smith;" after which followed the further description, that the land was bounded by the Otselic river on the east, Lewis Page's land on the west, the vendee's land on the south and the old Page farm on the north. The complainant paid the price as stipulated, and the defendant tendered to him a proper conveyance of forty acres of land lying in the east part of lot four. It was also claimed to be the forty acres conveyed to the vendor by Peter Smith. The complainant refused to receive the deed, because it did not contain the land bounded as lastly set forth in the contract.

The difficulty between the parties, arose from the fact that those bounds were found to include fifty-four acres of land. When the contract was made, the defendant had title to only forty acres, being the land conveyed by P. Smith. The residue of the fifty four acres was owned by Smith, and the defendant had been negotiating for it. He subsequently bought it and obtained a deed. It did not appear that forty acres laid off on the east end of lot number four, extending an equal distance on both sides of the lot, would contain the same land that Peter Smith conveyed to the defendant.

The complainant insisting on having a deed which would carry him to Lewis Page's land on the west, the old Page farm

on the north, and his own land on the south, which the defend-
ant refused to execute, filed the bill in this cause on the 14th of
July, 1842.

The defendant put in an answer, testimony was taken on both
sides, and the cause was brought to a hearing on the pleadings
and proofs.

*D. S. Dickinson*, for the complainant.

*E. Foote*, for the defendant.

THE ASSISTANT VICE-CHANCELLOR.—The contract gives
three particulars, either of which, if it stood alone, would have
sufficiently described a known parcel of land.  The first is forty
acres of land on the east end of lot number four.  The second
is a continuation of that, and was expressed as " being all the
land deeded to the party of the first part by Peter Smith."  The
third, designates a piece of land by surrounding boundaries.  It
does not appear whether the first description standing by itself,
would have included the land obtained by the second or the third
particular; because the evidence does not show distinctly that
lot number four was bounded north by the old Page farm, or
south by lands previously owned by Allerton.  A deed convey-
ing forty acres on the east end of lot four calls for all the land
on the east end, from the south to the north side.  Besides, the
designation of quantity, does not control, where there are courses
and distances, or monuments, describing the land intended to be
conveyed.  (*Jackson, ex dem. Livingston,* v. *Barringer*, 15
John. 471 ; *Jackson, d. Overacker,* v. *Cole*, 16 ibid. 257 ; *Hath-
away* v. *Power*, 6 Hill, 453.)

The first description, except in connection with the others,
must be laid out of view.

Next is the identification by reference to Smith's deed.  This
was sufficiently definite, because it could be made certain by the
description in that deed.  And the third mode which the con-
tract furnishes for locating the land, is equally definite and cer-
tain, without any extrinsic paper evidence.

But it turns out that the land included in this description

extends farther west than the parcel conveyed by Peter Smith's deed.

What then was the intention *of both parties,* as derived from the contract ? The only description given, by which Allerton, taking the contract for his guide, with no surveyor and no other paper to aid him, could find and locate the land, is the one which I have noted as the third. By that one, he would find the land for which he contracted, lying between the Otselic river on the east and Lewis Page's land on the west, and between his own land on the south, and the old Page farm on the north. Here were distinct, plain and visible designations of his boundaries. With the aid of a surveyor and by running out the land, he would have ascertained that there were over fifty acres within those bounds. And with a surveyor and Smith's deed, he would have learned that the northwest or west portion of the land, had not been conveyed to Johnson.

. But having in view that the parties were near the property when they were contracting, and one of them owning adjoining land ; that Smith's deed was not present or exhibited to Allerton ; and that they included in their contract the land contained within such notorious and well defined limits as those under consideration ; I cannot doubt but that both of the parties intended to contract with reference to those limits.

If I thought otherwise, the case of *Van Wyck* v. *Wright &* *Johnson,* (18 Wend. 157,) in the court for the correction of errors, is a decisive authority in support of giving that construction to the contract. It is there settled that a conveyance is to be construed in reference to its distinct and visible locative calls as marked or appearing on the land, in preference to quantity, course, distance, map, or any thing else. In that case the map was quite as definite as Peter Smith's deed was in the case before me. There also, besides the calls which were marked on the land, a reference was made to the deed under which the grantor held ; yet the Chancellor says in his opinion, that if the deed thus referred to, had contained a direct reference to the map on file, it would not have altered its legal construction.

The case of *Jackson, ex dem. McNaughton,* v. *Loomis,* (18 Johns. 81, S. C. in error, 19 ibid. 449 ;) contains a stronger

application of this principle than I am giving to the contract in question.

And *Jackson, d. Swain*, v. *Ransom*, (18 ibid. 107,) as well as the cases before cited, shows that there is such repugnancy between the descriptions in this contract, as calls for the application of the principle of construction by which the first is to be received and the last rejected.

If resort were to be had to the extrinsic evidence of the intention of the parties, it certainly confirms the legal conclusion derived from the contract itself.

From Mr. Ransom's testimony it is fairly inferrible, either that Johnson when he contracted with Allerton, supposed P. Smith's deed conveyed all the land east of Lewis Page's possession, or that having learned there was a parcel of land adjoining Page's, which was not embraced in his deed, he had by himself or Ransom, agreed with Smith for its purchase. On either hypothesis, it is plain that he intended to sell by the boundaries described. The language of the contract, that he would give, *or procure*, a good warrantee deed, indicates that the latter supposition is the true one. If he were aware that his deed did not convey all the land as far west as Lewis Page's, and really intended to sell no more than his deed included, his insertion of those boundaries evinced an intent to defraud Allerton.

I am confident that he entertained no such design, and that as both parties understood the contract when it was made; the one sold and the other bought, all the land lying between Lewis Page's possession and the river.

It is no objection to the validity of the contract, that the defendant did not own the lands contracted, when he stipulated for their sale. It suffices for a specific performance, that he now owns the whole. If he could not make a good title to the whole, the complainant could insist upon a title to such as he now has, and a compensation in damages for the residue.

There must be a decree for a specific performance accordingly, and the defendant must pay the costs of the suit.