## MICHAEL CRISS and Others *vs.* ZEPHENIAH ENGLISH, Executor of JOHN WITHERS.

CONTRACT: VARIANCE: PAROL EVIDENCE TO EXPLAIN WRITTEN CONTRACT,—WHEN ADMISSIBLE.—C. et al. sued E. to recover damages for the alleged breach of the following agreement: "Whereas, a certain J. W. hath loaned to us the sum of $10,000, payable in ten years from July 15th, 1852, with interest quarterly or earlier, at our option, and holds as security therefor a piece of land in the city of Baltimore, which was conveyed to him on the day of the date hereof, by J. C. & wife, at the request of J. D. K., Jr., one of our said firm, to whom the same belonged ; and whereas, there now exists a mortgage on said land in favor of a certain W. M., for the sum of $4,000, executed by a prior owner thereof, and not yet due, and which the present holders of said mortgage refuse to receive prior to its maturity. Now, therefore, in consideration of the premises, and of the said sum of $10,000, so loaned to us as aforesaid, we do hereby promise the said J. W., his executors, administrators and assigns, that we will at maturity, or earlier if possible, pay and take up the said mortgage debt and procure a release of the same." The breach assigned was the failure to pay off the mortgage referred to in the agreement. It was also averred in each count of the declaration, "that the property in said agreement recited as having been conveyed by John Clarke & wife to the plaintiff, at the request of A. D. K., Jr., on the day of the date of the agreement, was not, in point of fact, so conveyed on that day, ( although intended and agreed so to be,) but on the 30th of the same month."—HELD ;

1st. That the recitals in the agreement were not so material to the obligation of the contract, that a variance in any part of it would invalidate it.

2nd. That the variances were such that they were susceptible of explanation by parol, and the identity of the thing which was the subject matter of the agreement being thereby established, the plaintiff might recover for the breach of the contract respecting the mortgage.

3rd. That the mortgage was the principal and the land the incident; that the extinguishment of the mortgage was the object of the promise, the breach of that promise the cause of action, and the variation in the time or mode of conveyance of the land affected in no way the rights of the parties.

4th. Where the tendency of parol evidence offered by the plaintiff was not to contradict or vary the written contract, but to explain what was obscure and uncertain, and identify its subject, such evidence was admissible.

5th. That evidence offered on the part of the defendant to show that the contract purporting to be originally and equally binding on all the obligors, entered into for a consideration enuring to the benefit of all, was in fact only an original obligation as to the first obligors, and without consideration as to the rest, was inadmissible.

APPEAL from the Superior Court of Baltimore city.

This action was brought by the appellee to recover damages from the appellants, for the alleged breach of the following agreement:

"Whereas, a certain John Withers hath loaned to us the sum of ten thousand dollars, payable in ten years from the 15th of July, 1852, with interest quarterly, or earlier at our option, and holds as security therefor, a piece of land in the city of Baltimore, which was conveyed to him on the day of the date hereof, by John Clarke and wife, at the request of Alexander D. Kelly, Junior, one of our firm, to whom the same belonged. And whereas, there now exists a mortgage on said land in favor of a certain William Morris, for the sum of four thousand dollars, executed by a prior owner thereof, and not yet due, and which the present holders of said mortgage refuse to receive prior to its maturity.

"Now, therefore, in consideration of the premises and of the said sum of ten thousand dollars so loaned to us as aforesaid, we do hereby promise the said John Withers, his executors, administrators and assigns, that we will at maturity, or earlier if possible, pay and take up the said mortgage debt and procure a release of the same.

KELLY, BALL & CRISS,

J. C. WILSON & Co.,

WM. WOODWARD & Co."

*Baltimore,* 7th August, 1852.

The declaration contained two counts, in one of which the loan referred to in said agreement was alleged to have been made to the defendants, and to A. D. Kelly, Jr., and Paul C. Bowles, and in the other it was alleged to have been made to the firm of Kelly, Ball & Criss; and in each the breach assigned was the failure to pay off the mortgage on the land conveyed as a security for the loan, by reason of which the property was sold under the mortgage, and the net proceeds of sale, after paying off the mortgage,

&c., were largely insufficient to pay the amount of said loan. And it was also averred in each count, "that the property in said agreement recited as having been conveyed by John Clark and wife to the plaintiff, at the request of Alexander D. Kelly, Jr., on the day of the date of said agreement, was not in point of fact so conveyed on that day, (although intended and agreed so to be,) but on the 30th day of the same month."

At the trial the plaintiff offered in evidence the above agreement, the signatures to which were admitted to be the genuine signatures of the several firms signing the same, and it was also admitted, "that the said several firms were at the time of signing said paper, each carrying on a separate business in the city of Baltimore, and were in no way connected with each other, except in so far as may be shown by their signatures."

The plaintiff then offered in evidence:

1st. A deed of mortgage dated June 18th, 1850, from Thomas Camper to William Morris, of a piece of land in Baltimore city, to secure the payment of the sum of $4,000, five years after its date.

2nd. A deed in fee dated 6th of February, 1852, from said Camper to John Clark, of the same property, for the sum of $4,000, "subject, however, to the legal effect and operation of the aforesaid mortgage thereof from said Camper to said Morris."

3rd. A bond of conveyance from John Clark to Alexander D. Kelly, Jr., dated 5th of May, 1852, conditioned for the conveyance in fee to said Kelly of the same property subject to said mortgage on payment of two notes given for the purchase money, and drawn by the firm of Kelly, Ball & Criss, one for $2,040.86, and the other for $4,257.58, each dated 29th of April, 1852, and payable, one in four and the other in twelve months.

4th. A deed dated 7th of August, 1852, from John Clark

and wife to John W. Ball, in fee, for the same property, for the consideration of ten dollars.

5th. A bond of conveyance dated 11th of August, 1852, from John W. Ball and wife to Alexander D. Kelly, Jr., conditioned for the conveyance to him in fee of the same property, on payment at any time within ten years from the 15th day of July, 1852, of a note of Kelly, Ball & Criss, for $10,000, endorsed by J. C. Wilson & Co.

6th. A deed dated 30th of August, 1852, from John W. Ball and wife to John Withers of the same property, in fee, in consideration of $10,000, paid by him, subject to the bond of conveyance to Alexander D. Kelly, Jr., who was thereby declared entitled to receive from the said John Withers a conveyance of the same, on the said Withers being paid the amount which said Kelly was to pay therefor, and the notes and securities given for which had been assigned to said Withers by the said John W. Ball.

The plaintiff then offered in evidence the proceedings in the Circuit Court for Baltimore city, under which the said property was sold to satisfy the mortgage debt from Camper to Morris, by which it appeared that after payment of said mortgage debt and costs, there was left a balance of only $3,781.57, to go to the owner of the equity of redemption. And a short statement of these proceedings, together with the auditor's account, was agreed to be inserted in the bill of exceptions, in place of a full record of said proceedings.

The plaintiff here rested his case, and the defendants, to maintain the issue on their part joined, offered in evidence:

1. By L. J. Bayne,—that in July, 1852, he was a partner in the house of Selden, Withers & Co. In that month and year, Withers, ( the original plaintiff.) made a loan of $10,000 to Kelly, for which a note was given. The plaintiff then, on the requisition of the defendants, produced said note, which was read in evidence by the defendants.

This note was drawn by Kelly, Ball & Criss, dated July 15, 1852, to the order of J. C. Wilson & Co., for the sum of $10,000 payable, with interest thereon, ten years after date. It was proved to be endorsed by the said J. C. Wilson & Co., and also the said Selden, Withers & Co., and there was a memorandum then read which imported that the sum of $10,000 was wanted on a lot of ground in the city of Baltimore, which, for the reasons stated, was deemed an ample security. But if required, additional personal security would be given by Kelly, Ball & Criss and J. C. Wilson & Co.

They then proved by the said Bayne, that the said Kelly, so far as he knew, was the borrower of the said sum of $10,000 for which said note was given, and that J. C. Wilson & Co. and Wm. Woodward & Co., as far as he knew, had no interest in or benefit from said loan.

All this evidence having been given subject to exception, the plaintiff now moved that the same be rejected, and further prayed the Court to instruct the jury:

1. If the jury shall find, that on the 7th of August, 1852, the contract given in evidence was executed by Kelly and others, and that the piece of land mentioned in it is the same land covered by the mortgage executed by Camper to Morris, on the 18th of June, 1851, and that there was a mistake in the recital of said contract as to the actual conveyance of the said land to the plaintiff, on the day of the date of said contract, and that the conveyance from Clark and wife to Ball was executed on the 7th of August, 1852, at the request of Alexander D. Kelly, Jr., and was so executed as the first step in the process of vesting the title in the plaintiff to the property covered by it, and that the parties who signed said contract assumed that the other deeds, necessary for the purpose of such vesting of title, were executed, when they were not, either because they thought, supposed or chose to consider what remained to be

done, as if actually done, then the plaintiff is entitled to recover whatever the jury may find to have been the loss sustained by him in consequence of the failure of the parties signing said agreement to pay and take up the said mortgage debt, and procure a release of the same.

2. If the jury shall find that the writing, bearing date 7th of August, 1852, was executed by the parties whose signature it bears, and that there was no conveyance of any piece of land made on the day of its date to the plaintiff, by Clark and wife, and that the statement to that effect in the said writing was a mistake, and that a piece of land in said city was mortgaged to William Morris for $4,000, and that said mortgage was in existence on the 7th of August, 1852, and was not then due, and that the land subject to the said mortgage really belonged, on that day, to the said Kelly, and that said Kelly had agreed to convey said piece of land to the plaintiff, as security for the loan mentioned in said writing, and that Clark and wife, on the 7th of August, 1852, conveyed said land, at the request of Kelly, and in pursuance of such agreement, and that conveyance was followed by other instruments or conveyances in the same month and year, by which said land became vested in the plaintiff, as security for the amount of the loan mentioned in said writing of the 7th of August, 1852, and that the said mortgage debt mentioned in said writing was not paid by the defendants, or any of them, or any member of the firms whose names are signed to the same, either at the maturity of said debt, or before or since, and that the said land was sold for payment of the said mortgage debt, under legal proceeding for that purpose, and that said debt and costs were paid out of the proceeds of said sale, then the plaintiff is entitled to recover the amount so paid, with interest.

But the defendants, insisting on their objection to the admissibility of the evidence so offered on the part of the plaintiff, prayed the Court to instruct the jury :

1. If they shall find the execution of the paper dated the 7th of August, 1852, and that prior to the execution of said paper, the firm of Kelly, Ball & Criss, or any of them, had borrowed from the plaintiff the sum of $10,000, and that at the time of said loan, and prior to the execution of said paper, the said Kelly, Ball & Criss, or any member of that firm, agreed to give to the plaintiff security for said loan upon the property mentioned in the said paper of the 7th of August, 1852, and that there was at the time of said loan, and prior to the execution of said paper, a mortgage upon said property, as mentioned in said paper, and that at the time of obtaining said loan, and prior to the execution of said paper of August 7th, 1852, and as a condition of said loan, the firm of Kelly, Ball & Criss, or any of them, agreed with the plaintiff that they would pay and take up said mortgage, as mentioned in said paper, and that the defendants, J. C. Wilson & Co., and Wm. Woodward & Co., or either of them, did not unite in the obtention of said loan from the plaintiff at the time the same was made, and that said firms had no interest in said loan, and received no part thereof, and that the said firms, or either of them, did not unite, prior to the execution of the said paper, in the undertaking aforesaid of Kelly, Ball & Criss, or any of said firm, to pay and take up said mortgage at maturity, at the time said undertaking was made, and that none of the members of the firms of Wilson & Co. and Woodward & Co., were parties to the said agreement prior to the execution of said paper, and that the firms of Kelly, Ball & Criss, Wilson & Co., and Woodward & Co., were separate and distinct firms, and each composed of separate and distinct persons, then the plaintiff is not entitled to recover in this action.

2. If the jury find the facts enumerated in the preceding prayer, then there is no evidence that any property was

conveyed by Clark and wife to Withers, on the day of the date of the said agreement.

3. If said facts are found, then the deed from Ball and wife to Withers, on 30th of August, 1852, is not admissible to show a non-compliance with the terms of the paper offered in evidence.

4. If in addition to the facts enumerated in the first prayer, the jury shall find that the loan of $10,000 to Kelly, Ball & Criss, was made on the 15th of July, 1852, and that the paper declared on, was signed by Wilson & Co. and Woodward & Co., on the 7th of August, 1852, then there was no legal considerations moving to said defendants for their promise contained in said paper.

But the Court (MARTIN, J.,) admitted the evidence so offered by the plaintiff, and excluded that offered by the defendants, and granted the prayers so tendered by the plaintiff, and rejected those which were offered on the part of the defendants. Whereupon the defendants excepted, and the verdict and judgment being for the plaintiffs, appealed.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Thomas S. Alexander* and *G. W. Dobbin* for the appellants.

The appellants claim a reversal of the judgment on the following grounds:

1. A Court of Law cannot correct an alleged mistake in a written agreement, and administer relief on the footing of such correction. The jurisdiction in cases of mistake is purely equitable, and is termed even in equity a moral jurisdiction. *Townsend vs Stangroom,* 6 *Ves.,* 326. *Wesley vs. Thomas,* 6 *H. & J.,* 27. *Newcomer vs. Kline,* 11 *G. & J.,* 471. In this last case, relief was given expressly on the ground that the party had not full and adequate relief

at law. See, also, *Hunt vs. Rousmanier*, 8 *Wheat.*, 211, where it is distinctly assumed that the jurisdiction to correct a mistake is peculiar to equity. Those cases are illustrative of a rule which it is believed is evidenced by all the authorities. *Adams' Equity*, 406, ( 168.)

2. Mistake, to be corrected in equity, must be error in recital, description or stipulation, whereby the agreement is undesignedly made to import something different from that which the parties intended it should import. "If parties voluntarily choose to express themselves in the language of the deed, they must be bound by it." The mistake must be the mistake of both parties, as well of the party who seeks relief, as of the party against whom relief is sought. And again, it is to be made out by evidence "irrefragable," "clear and overwhelming," "almost, if not quite overwhelming." In the language of Chancellor KENT, "no amendment was ever made without absolute conviction of the truth and precision of the real agreement." *Irnham vs. Child*, 1 *Br. C. C.*, 92. *Shelburne vs. Inchiquin*, 1 *Br. C. C.*, 338. *Townsend vs. Stangroom*, 6 *Ves.*, 328. *Wesley vs. Thomas*, 6 *H. & J.*, 25. *Beard vs. Hubble*, 9 *Gill*, 430. *McElderry vs. Shipley*, 2 *Md. Rep.*, 35. *Cook vs. Husbands*, 11 *Md. Rep.*, 492. *Katz vs. Moore*, 13 *Md. Rep.*, 560. *Lyman vs. United Ins. Co.*, 2 *Johns. C. C.*, 634. *Wilson vs. Wilson*, 14 *Sim.*, 424, which illustrates the subject in all its branches. *Woollam vs. Hearn*, 7 *Ves.*, 211, Sir WILLIAM GRANT denies that equity can reform an agreement which, by the Statute of Frauds, is required to be in writing, and then enforce the execution of the reformed agreement; and this view is sustained by the general current of the authorities which are collected and arranged in 2 *Leading Cases in Equity*.

In the greater number, if not all of the cases, wherein a different rule has been stated, there was part performance, which would have justified the enforcement of the agree-

ment, if it had rested altogether in parol, as in *Moale vs. Buchanan*, 11 *G. & J.*, 314. In answer to the 1st point of the appellees, we rely upon 5 *H. & J.*, 81. 2 *H. & J.*, 2. 11 *Md. Rep.*, 322.

3. There is not sufficient evidence of a mistake to justify correction even by a Court of Equity. If the parties "choose to consider what remained to be done as if actually done," the misrepresentation of fact, to gratify their caprice, is not a mistake which can be corrected anywhere. The paper on which this action is brought was prepared by the counsel for the plaintiff, and we have no explanation by him of the causes of the alleged mistake. The only evidence of the agreement between the parties, is supplied by the writing itself. And it is not shown that there is not on the records, a conveyance made by John Clark and wife to Withers, on the 7th of August, 1852, for land in the city of Baltimore, which was encumbered by mortgage to William Morris, as recited in said writing. It is not shown that the land mentioned in said writing is the same land covered by the mortgage from Camper to Morris, nor that the deed from Clark and wife to Ball was so made at the request of Kelly, nor that said deed was executed as the first step in the *process of vesting* the title in the plaintiff covered by it.

4. The positions taken in the last point are more peculiarly applicable to the first prayer on the part of the plaintiff; with very little modification in circumstance, they apply to the second of the plaintiff's prayers. The common vice of both prayers lies in assuming, that the mere variance between the case stated in the writing of the 7th of August, 1852, and the case made out by the proofs, is "irrefragable," "clear and overwhelming" proof of mistake in the writing, and assuming thus the fact of mistake, the jury are charged to find a variety of circumstances, which, if they existed, would render the alleged mistake probable,

but in reference to which, no sufficient evidence was offered. by the plaintiff.

5. If evidence was admitted on the part of the plaintiffs to correct a mistake in the agreement of 7th of August, 1852, in regard to the supposed deed from Clark and wife to Withers, the evidence offered by the defendants to show that the loan was made to Kelly, or to Kelly, Ball & Criss, and that Wilson & Co. and Woodward & Co., were sureties only, ought to have been admitted.

Upon the whole evidence, this fact of suretyship was clearly made out. But if the evidence rendered on the part of the defendant was properly excluded, the jury might have found that fact from the evidence introduced on the part of the plaintiff. It is to be assumed, therefore, in discussing the merits of the instruction given to the jury, that the fact of suretyship was made out, and indeed the second instruction expressly assumes, that the loan was to Kelly.

6. Assuming that the loan was made to Kelly, or to Kelly, Ball & Criss, and that the firms of Wilson & Co. and Woodward & Co., were sureties merely, the agreement must be adjudged void as against those firms for want of sufficient consideration to support it. It is not shown that the signatures of those other firms to the agreement were made prior to or contemporaneously with the advance to Kelly, or to Kelly, Ball & Criss. On the contrary, it is apparent that the advance was made before the date of the agreement sued on, and before the signatures of those other firms were attached. The case is, therefore, within *Aldridge vs. Turner*, 1 *G. & J.*, 427. *Nabb vs. Koontz*, 17 *Md. Rep.*, 283. *Wyman vs. Gray*, 7 *H. & J.*, 409.

*J. Mason Campbell, D. M. Thomas,* and *R. B. Taney Campbell* for the appellee.

The counsel for the appellee will contend, that the action of the Court below was correct.

1st. Because the identity of the property referred to in the deeds and instruments of writing offered in evidence by the appellee, with that referred to in the agreement declared on, is sufficiently established to warrant the question of identity being submitted to the jury.

It was a piece of land situated in the city of Baltimore, and subject to a mortgage not then due, of which William Morris was the holder, as stated in the agreement. John Clark also was, on the day of the date of the agreement, the legal holder of the land, and Alexander D. Kelly, Jr. had the beneficial interest in it, as appears by the bond of conveyance from Clark to him, which was offered in evidence. The deed from Clark to Ball, on the 7th of August, 1852, (the date of the agreement,) being for a nominal consideration, (ten dollars,) was void as against the rights of third parties, and therefore, standing by itself, was void as against A. D. Kelly, Jr., who held a bond of conveyance for the property. And we should be at a loss to understand why Kelly should waive his rights under the bond of conveyance from Clark to him and accept a new bond of conveyance from Ball, whose title he had a right to ignore, by which new bond he could only get a deed for the property on the payment of an additional sum of $10,000, but for the explanation afforded by the agreement of the 7th of August, 1852, and by the deed from Ball to Withers made on the 30th of the same month, by which deed the same property was conveyed to said Withers, subject to the bond of conveyance to Kelly. But by these two papers the explanation is apparent. For by the agreement it will appear, that said Withers, as a security for the loan made by him, of ten thousand dollars, with interest from the 15th of July, 1852, was to hold the piece of land which Clark, at the request of Kelly, was to convey to him, and

the effect of the deed from Clark to Ball, the bond of conveyance from Ball to Kelly, and the deed from Ball to Withers, was to vest the land in Withers in exact conformity with this agreement, for Withers was thereby entitled to hold the land only until the said sum of ten thousand dollars was paid, when Kelly's bond of conveyance would require a conveyance to him. It thus appears that Ball did not take the land from Clark adversely to Kelly's rights, but in recognition of them, and for the purpose of doing with it what Clark himself was bound to do. He, in other words, acted as Clark's agent, and Withers' title was derived, not from Ball, but from Clark acting through the agency of Ball. And these deeds, therefore, substantially gratify the statement in the agreement, that the property was conveyed to Withers by Clark, as what was done by his agent may be correctly described as done by by himself. *Eckell vs. Jones*, 8 *Barr.*, 501. And as Withers' title is to be referred back to Clark's deed to Ball, of the 7th of August, 1852, we also think there is no substantial discrepancy between the deeds given in evidence and the agreement, in respect to dates.

But apart from this, it was a perfectly legitimate deduction from the papers, that Clark intended Ball to execute the bond to Kelly and the deed to Withers on the same day on which he received the deed from Clark, and if so, Withers ought not to be prejudiced by the failure of one of the defendants to do his duty, and over which failure he had no control. The misrecital in the agreement as to the date of the conveyance to Withers, was, at the most, a mistake by which none of the defendants were in any way prejudiced. And that a mistake of this sort in the recital of an instrument may be corrected, is clearly established by the authorities *Hall vs. Cazenove*, 4 *East.*, 477. *Man vs. McDowell*, 3 *Barr.*, 357. *Franz vs. Smith*, 5 *Gill*, 280. *State, use Wilcoxen, vs. Wooten*, 4 *H. & J.*, 21. *Wood vs.*

*Fulton & Stark*. 4 *H. & J.*, 329. *Johns vs. Church*, 12 *Pick.*, 557. 1 *Metc.*, 180. 1 *Greenleaf's Ev.*. sec. 301. *Boardman et al. vs. Lessees of Reed*, 6 *Peters*, 328. *Barr vs. The Broadway Ins. Co.*, 16 *N. Y. Rep.*, 267. 6 *Peters*, 511.

And that extrinsic evidence is admitted to apply the words of an instrument to the subject matter of it, where the description is true in part, but not true in other respects, is shown by the following cases : *Miller vs. Travers*, 8 *Bing.*, 244. *Hutchins vs. Scott*, 2 *M. & W.*, 809. *Hall vs Davis*, 36 *N. H.*, 569. 1 *Greenlf. Ev.*, secs. 282, 285. 292, &c. 2 *Pars. on Cont.*, 514, 550. *Jackson vs. Loomis*, 18 *Johns.*, 81. Same case in 19 *Id.*, 449. *Sutton vs. Boker*, 5 *Gray*, 416.

2nd. Because the evidence offered or relied upon by the defendants to show that the firms of Wm. Woodward & Co. and J. C. Wilson & Co. were sureties and not principals, was not admissible to contradict the terms of the agreement, and was properly rejected, as were also the prayers offered by them and based on the theory of those firms being collateral and not original parties to the agreement. All the parties who signed the agreement agreed ( whether the fact was so or not) to assume the position of original contractors, and the plaintiffs, by their own admission, dealt with them as such. Therefore, it does not now lie in their mouths to say they were not what they represented themselves to the plaintiff to be, for the purpose of giving a different effect to the contract from what it bears on its face. *Sprigg vs. Bank of Mount of Pleasant*, 10 *Peters*, 257. *Same vs. Same*, 14 *Peters*, 201. *Hurn vs. Soper*, 6 *H. & J.*, 276–283.

And there being no ambiguity about this instrument, in this respect, parol evidence is not admissible to contradict its clear and certain terms. *Watkins vs. Stockett*, 6 *H. &*

*J.*, 444, 435. *Wesley vs. Thomas,* 6 *H. & J.*, 24. *Mc-Elderry vs. Shipley,* 2 *Md. Rep.*, 35, 25. *Henderson vs. Mayhew,* 2 *Gill*, 409, 393.

Even if this were a collateral undertaking on the part of Wilson & Co. and Baldwin & Co., yet, if made at the time of the original agreement, the same consideration applies to all the parties. *Snevely vs Johnson,* 1 *W. & S.*, 307.

And there is no evidence in the case from which the jury can find that the signatures of all the parties were not affixed to the paper at the same time. It is true that Mr. Bayne says the money was loaned in the month of July, whereas, the agreement says the loan was made on the 7th of August; and in one sense it is probable that the loan was made on the 15th of July, that is to say, that the loan was on that day agreed upon, to be perfected afterwards, and the money being then set apart and specially appropriated to this purpose, interest was charged upon it from that day, as appears by the agreement, and in this respect the loan might properly be spoken of as made on that day ; but this, if true, in no way conflicts with the fact of the money only having been paid over on the 7th of August, which is the sense in which the agreement speaks of said loan having been made on that day.

If this view of the testimony be correct, it will then appear that all the parties signed the agreement at the time when the loan was made, (the 7th of August.) And it will then, on the authority last cited, be immaterial to inquire whether or not any of the parties to the agreement were only sureties, as all signing at the same time, whether principals or sureties, would be equally affected by the consideration moving to any one of them.

BOWIE, C. J., after stating the facts of the case, as on pages 554 to 560, delivered the opinion of the Court as follows :

The admission of the evidence offered by the plaintiff,

and the instructions of the Court, at his instance, based upon that evidence, virtually decide that the recitals in the agreement, were not so material to the obligation of the contract, that a variance in any part of it would invalidate it; but that such variances were susceptible of explanation by parol, and the identity of the thing which was the subject matter of the agreement, being thus established, the plaintiff might recover for the breach of the contract respecting the mortgage.

The subject matter of the contract in this instance, was a mortgage of a certain William Morris, for the sum of $4,000, executed by a prior owner, on a lot of ground in the city of Baltimore, which was described as conveyed to John Withers on the day of the date thereof, (7th of August, 1852,) by John Clark and wife at the request of Alexander Kelly, to whom the same belonged.

The obligors reciting that John Withers had loaned them the sum of $10,000, payable in ten years, to the 15th of July, 1852, etc., and holds as security therefor "a piece of land in the city of Baltimore, which was conveyed," etc; and whereas, there now exists a mortgage on said land in favor of William Morris for the sum of $4 000, executed by a prior owner thereof, and not yet due, and which the present holders of said mortgage refuse to receive prior to its maturity, in consideration of the premises, and of the said sum of $10,000, so loaned to them as aforesaid, thereby promised that at the maturity, or earlier if possible, to pay or take up the said mortgage debt, and procure a release of the same. The testimony offered on the part of the plaintiff, proved all the leading and important features of the description; the mortgage was the principal in this instance, and the land the incident. The extinguishment of the mortgage was the object of the promise, the breach of that promise the cause of action, and the variation in the time or mode of conveyance of the

land affected in no way the rights of the parties. It is a case of *"falsa demonstratio."*

"Every application of the maxim, implies that a mistake has occurred in the use of language. In all such cases the legal question is, conceding a mistake, is the intent clear upon the whole language employed? (*Wigram on Ext. Ev.*, 99.) If, notwithstanding the mistake, the intent remains clear, the mistake is to be disregarded even at law, and there is no occasion to seek a correction of the instrument, by the aid of equitable principles." *Barr vs. The Broadway Ins. Co.*, 16 *N. Y. Rep* , 269, 274.

Neither *Wesley vs. Thomas*, 6 *H. & J.*, 27, nor *Newcomer vs. Kline*, 11 *G. & J.*, 471, cited by the appellants to the contrary, bear the remotest relation to the case before us. Those were clear cases of equitable jurisdiction, in the former of which, it was held that the deed given for a fixed consideration, was not to be impeached by parol proof, without an allegation of fraud ; and the latter sustained an application, to reform a single bill, by inserting the word "dollars," because the complainant had not an adequate remedy at law.

The admissibility of the evidence excepted to by the defendants, explaining the recitals of the agreement, and proving the identity of the subject matter, is sustained by the general rules of evidence and a number of adjudged cases. *Vide* 1 *Greenlf. Ev.*, ch. 15, sec. 285, 282. *Frantz vs. Smith*, 3 *Gill*, and authorities there cited.

That a part of the description may be rejected as surplusage, is shown by the case of *Jackson, ex dem McNaughton vs. Loomis*, 18 *John. Rep.*, 86. 19 *John. Rep.*, 448, where the words "Lot No. 51," part of the description were rejected, the description being sufficiently certain without those words.

The tendency of the testimony thus offered by the plaintiff was not to contradict, alter or vary the written con-

Criss et al. *vs.* Withers' Ex'r.

tract, but explain that which was uncertain and obscure, and identify its subject.

The testimony offered on the part of the defendants, had a directly opposite tendency ; its object as indicated by the prayers based upon and offered in connection with it, was to convert a contract, which was a primary, absolute obli- gation, into a secondary and collateral one. In other words, to show that a contract purporting to be originally and equally binding on all the obligors, entered into for a consideration enuring to the benefit of all, was in fact, only an original obligation as to the first obligors, and without consideration as to the rest. Such testimony certainly conflicts with the elementary principles of evidence. 1 *Greenlf. Ev.*, ch. 4, sec. 87. 6 *H. & J.*, 435, 444. *Wesley vs. Thomas*, 6 *H. & J.*, 24. 2 *Md. Rep.*, 35.

The first and fourth prayers of the defendant being founded on the hypothesis that parol proof might be ad- mitted to change the character of the agreement, were pro- perly rejected, and the second and third operating upon the testimony offered by the plaintiffs, and declaring it in- admissible for the purposes offered, were properly over- ruled, as we have shown in our consideration of the char- acter of that testimony, and the prayers of the appellee founded on it.

*Judgment affirmed.*

\* ( Decided July 12th, 1865.)

---

*\*Note.*—This case should have appeared in 23 Md. Rep., but at the date of the publication of that volume the opinion of the Court of Appeals could not be found after diligent search ; it has since been accidentally discovered among papers of an entirely different class, and being a case of some interest, it has been thought best to give it place at the close of this volume.